[S. F. No. 10785. In Bank.—September 14, 1923.]

RAILROAD COMMISSION OF THE STATE OF CALIFORNIA, Petitioner, v. RAY L. RILEY, Controller of the State of California, Respondent.

[1] STATUTORY CONSTRUCTION — REPEAL BY IMPLICATION. — Repeals by implication are not favored and are recognized only when there is an irreconcilable conflict between two or more existing legislative enactments.

[2] PUBLIC UTILITIES ACT — RAILROAD COMMISSION FUND — BUDGET AMENDMENT.—There is no irreconcilable conflict between the provisions of the "budget amendment" and the "budget bill" and the provisions of sections 57 and 85 of the Public Utilities Act, and therefore the provisions of the latter act, creating the "Railroad Commission Fund" and appropriating the same to the use of that commission, have not been repealed and are now valid and existing provisions in full force and effect.

APPLICATION for Writ of Mandate to require the State Controller to examine and settle the account of the State Railroad Commission covering certain fees and to certify the same to the State Treasurer for deposit to the credit of the Railroad Commission. Writ granted.

The facts are stated in the opinion of the court.

Hugh Gordon and Carl I. Wheat for Petitioner.

H. C. Lucas, James L. Atteridge, Dion R. Holm and Hill & Morgan for Respondent.

LENNON, J.—This is an application for a writ of mandate directing the respondent, Ray L. Riley, as controller of the state of California, to examine and settle the account of the state Railroad Commission covering and controlling certain fees collected by said Commission pursuant to the provisions of section 57 of the Public Utilities Act (Stats. 1915, c. 91, p. 115), and to certify the amount thereof to the treasurer of the state of California for deposit by him to the credit of the Railroad Commission fund.

Section 57 of the Public Utilities Act provides for the collection of fees by the Railroad Commission for the following purposes: (1) For certificates issued by the Commission pursuant to section 52 of the Public Utilities Act, authorizing the issuance of bonds, notes, and other evidences of indebtedness by public utilities; (2) for certified copies of official documents and orders filed in the Commission's office and for annual reports, transcripts of evidence and proceedings before the Commission, and (3) for various reports and publications issued under the Commission's authority. By the same section it is provided that all of the fees charged and collected thereunder "shall be paid, at least once each week, accompanied by a detailed statement thereof, into the treasury of the state to the credit of a fund to be known as the 'Railroad Commission Fund.'" Section 85 of the same act provides that the fees so charged and collected are specifically appropriated to be used by the Railroad Commission in carrying out the provisions of the Public Utilities Act.

Between July 1, 1923, and July 6, 1923, the Railroad Commission, acting under and in pursuance of the provisions of said section 57 of the Public Utilities Act, charged and collected certain fees aggregating in amount the sum of $477.45. This money was thereafter transmitted by the Railroad Commission to the treasurer of the state of California, with a request that said treasurer deposit the same to the credit of the "Railroad Commission Fund." At the same time the Railroad Commission transmitted a report of the fees so collected to the respondent, Ray L. Riley, controller of the state

of California, requesting him to examine and settle the account of the Railroad Commission as set forth in said report, and to certify the amounts stated therein to the treasurer of the state of California for deposit by him to the credit of the "Railroad Commission Fund." Respondent refused to credit said sum to the "Railroad Commission Fund."

No claim has been made, and of course no claim could be made, that the provisions of the Public Utilities Act creating the fund known as the Railroad Commission fund and appropriating the same to the use of the Railroad Commission are *expressly* repealed by the enactment of either the constitutional provision known as the "budget amendment" (art. IV, sec. 34, Const.) or the "budget bill" (Stats. 1923, c. 121). Nowhere in either of these enactments is there any attempt made to repeal the statute directing the collection of the revenue and specifying the fund into which the revenue is to be paid, nor is there a specific provision requiring that the revenue so collected be transferred to the general fund. In the absence of such express provisions there can, of course, be no express repeal.

It is contended, however, in support of the respondent's refusal to credit the sum in controversy to the "Railroad Commission Fund," that the constitutional provision for the budget bill, together with the budget bill itself, operated necessarily as an implied repeal of all appropriations made and existing pursuant to the provisions of statutes which preceded the preparation and presentation of the budget bill, and thereby, in effect, demitted and diverted all special funds into the general fund.

If section 57 of the Public Utilities Act has not been impliedly repealed by subsequent legislation, then, of course, it is the plain duty of the state controller, in accordance with the provisions of section 433, subdivision 11, and section 434 of the Political Code, to examine and settle the account transmitted to him by the Railroad Commission and to certify the amount thereof to the treasurer, to be credited to the "Railroad Commission Fund."

In support of the contention of the existence of a repeal by necessary implication it is urged that it was intended by the "budget amendment" to provide a scheme whereby each and every state expenditure, of whatsoever nature, during the biennial period following the enactment of the "budget bill," was to be provided for in the "budget bill," and that

the "budget bill' was to become the single and exclusive source of all state appropriations and that the result of the passage of the constitutional provisions providing for such a scheme was to repeal by implication all previous statutes providing for continuing all recurrent appropriations. [1] Repeals by implication are not favored and are recognized only when there is an irreconcilable conflict between two or more existing legislative enactments. (*Malone* v. *Bosch,* 104 Cal. 680 [38 Pac. 516] ; *Rowe* v. *Hibernia etc. Society,* 134 Cal. 403 [66 Pac. 569] ; *Estate of Brewer,* 156 Cal. 89 [103 Pac. 486].) There is a difference in the language of the constitutional amendment of this state and that of the other states, and whatever may have been the purpose and intent of the budget bills of other states, the language employed in the California constitutional provision clearly indicates that the "budget bill" was not intended to become the single and exclusive source of all state appropriations. This necessarily follows from the fact that it is provided in the constitutional amendment itself that other appropriation bills may be enacted. The only limitation which is placed upon other possible appropriation bills is that neither house shall place upon final passage any other appropriation bill until the budget bill has been finally enacted, and that no bill making an appropriation of money, except the budget bill, shall contain more than one item of appropriation, and that for one single and certain purpose to be therein expressed.

Furthermore, instead of there being any indication in the "budget amendment" of an intent to repeal appropriations validly made and provided for by existing law, there is, on the contrary, a clear intent shown to provide for a scheme of appropriation for a biennial period whereby all prior appropriations validly made and provided by existing law are to continue. It is expressly provided in the "budget amendment" that the "governor shall, within the first thirty days of each regular session . . . , submit to the legislature, . . . a budget containing a complete plan and itemized statement of all proposed expenditures of the state *provided by existing law* or recommended by him. . . . " It further provides that the budget shall be accompanied by an appropriation bill covering the proposed expenditures, to be known as the "budget bill." In other words, the "budget amendment" expressly provides that appropriations made

by existing law shall be provided for by appropriations in the budget bill. This falls far short of showing an intent to repeal these appropriations. It is, therefore, quite apparent that the constitutional provision itself does not repeal by implication any prior appropriation bill validly enacted by a previous legislature. On the contrary, the constitution here provides for inclusion in the budget of expenditures of the state, those provided by existing law, and so long as these expenditures remain expenditures provided by existing laws, they become part and parcel of the budget regardless of whether or not they are expressly set forth therein.

There still remains the question of whether or not the provisions creating the special fund for the Railroad Commission to be established by the receipt of certain fees and appropriating that fund to the use of the Railroad Commission has been repealed by the provisions of the budget bill to the effect that in all cases in which statutory provisions or appropriations have been made for items included in the budget bill, the amounts therein appropriated shall govern, and such other appropriations shall not be deemed to be in addition thereto.

The initial sentences of that section of the budget bill which it is claimed have this effect read as follows:

"The following sums of money are hereby appropriated out of any money in the state treasury not otherwise appropriated, and shall be used for the support of the State of California for the seventy-fifth and seventy-sixth fiscal years. In all cases in which statutory provisions or appropriations have been made for items of salary or of support included in this act the amounts herein appropriated shall govern, and such other appropriations shall not be deemed in addition hereto. Appropriations for purposes not otherwise provided for herein which have been heretofore made by any provision of the constitution or of any existing statute shall not be affected by this act but shall continue to be governed by the constitutional or statutory provisions applicable thereto."

Clearly, it cannot be said that these provisions operate as an implied repeal of all appropriations by all statutes preceding the budget bill and that they thereby in effect do away with all special funds and convert such funds into part of the general fund. Section 1 of the budget bill above quoted expressly recognizes that other statutes for appropria-

tions and the setting apart of funds still exist. Indeed, it is expressly provided that in certain instances such appropriations shall continue. In the absence of some specific provision in the budget bill requiring that the special funds be transferred to the general fund, it would seem that the legislative intention is clearly shown to be that such special funds shall remain intact as special funds.

The effect of the second sentence of section 1 of the budget bill providing that in cases in which statutory provisions or appropriations have been made for items of salary or support included in the budget bill, the amounts therein appropriated shall govern is that the amounts appropriated from the general funds in the treasury, as distinguished from the special fund, shall be used only after the special fund is exhausted. That is to say, that the special fund theretofore set apart for the payment of salaries and support is to be utilized first and that thereafter there may be used out of the money in the treasury not otherwise appropriated the difference between the amount in the special fund and the amount set out in the budget bill so that the total amount appropriated for the fiscal year shall not exceed for support and salaries the amount specified in the budget bill. The effect of this upon such a fund as the Railroad Commission fund, which is insufficient to furnish complete support and maintenance to the Commission, is that the fund so set apart for that purpose shall be a continuing special appropriation recognized in the budget bill which must be used in conjunction with sufficient amounts from the general fund to make the total amount appropriated.

[2] It follows from what we have said that there is no irreconcilable conflict between the provisions of the "budget amendment" and the "budget bill" and the provisions of sections 57 and 85 of the Public Utilities Act and that, therefore, the provisions of the latter act, creating the "Railroad Commission Fund" and appropriating the same to the use of that Commission, have not been repealed and are now valid and existing provisions in full force and effect.

Let the writ issue as prayed for.

Richards, J., *pro tem.*, Waste, J., Wilbur, C. J., Seawell, J., Lawlor, J., and Kerrigan J., concurred.