[Sac. No. 3548. In Bank.—September 27, 1923.]

BOARD OF OSTEOPATHIC EXAMINERS OF THE STATE OF CALIFORNIA et al., Petitioners, v. RAY L. RILEY, Controller of the State of California, Respondent.

[1] BOARD OF OSTEOPATHIC EXAMINERS—PROPER INITIATIVE LEGISLATION.—The initiative law of 1922 providing for the formation of the Board of Osteopathic Examiners, and the method for the function of said self-sustaining board through a system of fees and collections, and further providing that the moneys to be thus derived should be deposited in the state treasury in a special fund, to be drawn upon for the salaries, costs, and expenses of said board, was within the proper sphere of initiative legislation.

[2] ID.—BUDGET AMENDMENT—CONSTRUCTION.—The initiative act of 1922 providing for the formation of the Board of Osteopathic Examiners, etc., was not abrogated, either expressly or by necessary implication, by the adoption of the "budget amendment" to the constitution.

[3] ID. — SPECIAL FUND OF BOARD — METHOD CREATING AND DRAWING UPON.—Under the initiative law of 1922 providing for the formation of a Board of Osteopathic Examiners, the fees and collections of said board should be deposited in a special fund in the state treasury and the claims of said board for salaries and expenses should be drawn upon and paid out of said fund; and under section 433 of the Political Code it is the duty of the state controller to examine and settle the accounts of said board and to certify the same and the amount thereof to the state treasurer, to be by him credited to said special fund, and it is also the duty of the controller on demand of said board to draw his warrants upon said fund for salaries of said board.

APPLICATION for a Writ of Mandate requiring the State Controller to settle the accounts of the Board of Osteopathic Examiners and to draw his warrants for salaries.

The facts are stated in the opinion of the court.

C. E. McLaughlin and C. P. McLaughlin for Petitioners.

H. C. Lucas, James L. Atteridge and Dion R. Holm for Respondent.

Garret L. McEnerney and Andrew F. Burke for Board of Control.

RICHARDS, J., *pro tem.*—This is an application for a writ of mandate directed to the respondent herein, as state controller, requiring him to do certain acts relating to the accounts and claims of the petitioners, acting as a Board of Osteopathic Examiners under and by virtue of the provisions of the so-called "Osteopathic Act," an initiative measure adopted by the people at the general election held on November 7, 1922. The application herein is in two counts, in the first of which it is demanded that the respondent, as state controller, examine and settle the account of the said Board of Osteopathic Examiners for fees collected, reported, and accounted for during the month of July, 1923, under the provisions of the said act creating

said board, and which the state controller is required to examine, settle, and certify to the state treasurer under the provisions of section 433 of the Political Code. By the second count in said application it is demanded that the state controller be required to issue his warrant on the state treasurer for the sum of $225 upon the claim of the petitioner for said sum for the salaries of secretary and stenographer of said board approved by the board of control and which the petitioners demand shall be made payable out of the ''Board of Osteopathic Examiners Contingent Fund'' in the state treasury. The answer of the respondent herein, while admitting the averments of fact in both counts of said application contained, denies that he, as to the first count therein, is in duty bound to certify the accounts of the petitioners as set forth in said first count of their petition to the state treasurer to be credited to the ''Board of Osteopathic Examiners Contingent Fund''; and as to the second count therein denies that he is in duty bound to issue his warrant on the state treasury as demanded by the petitioners, payable out of said special fund in the state treasury. The respondent bases his refusal to do both or either of said acts upon his assertion that the effect of the adoption by the electors of California of the constitutional amendment known as the ''budget amendment,'' and the effect of the submission by the Governor of California to the state legislature of his ''Budget Recommendations and estimated Revenues''; and the effect of the adoption by the legislature of the budget bill of 1923 have been to repeal or modify any and all appropriations theretofore made by the legislature or by the people of the state of California in so far as there might have been created a special fund thereby for the payment of the petitioners' said claim.

The respondent herein does not in his answer filed herein make any other specific assault upon the so-called ''Osteopathic Initiative Law'' than that above referred to, but it is contended in the briefs of his counsel filed herein that said law is invalid for the reason as stated therein that the making of appropriations is not legislative, but administrative in character, and hence does not come within the constitutional provision providing for direct action of the people in the adoption of initiative laws. We discover no merit in this contention. The provision in the initiative law empowering the Board of Osteopathic Examiners created thereby to

collect fees in the exercise of the powers of said board and to deposit the moneys so collected in the state treasury in a special fund which shall in turn be drawn upon for the cost of maintenance of said self-sustaining board, is merely an incidental provision to the main objects of its creation. The passage of laws providing for the organization and functioning of boards and commissions of this character performing subordinate administrative functions of the state government have from the earliest period of our state history down to its latest acts of legislation been always regarded as legislative in character and have in certain instances been committed to the legislature by the express terms of the constitution; as, for example, the state board of health. The provision in many of these statutes by which boards and commissions of various kinds are required or permitted to collect fees and charges in the exercise of their functions, while incidental to the main purpose of their creation, are none the less in many instances essential to the proper exercise of their powers, particularly where these are regulatory in character. [1] We entertain no doubt, therefore, that the initiative law of 1922 providing for the formation of the Board of Osteopathic Examiners, and also providing the method for the function of said self-sustaining board through a system of fees and collections, and further providing that the moneys to be thus derived should be deposited in the state treasury in a special fund, which was in turn to be drawn upon for the salaries, costs, and expenses of said board, was, as a whole, within the proper sphere of initiative legislation.

[2] As to the respondent's next contention, to the effect that said initiative law has been abrogated, either expressly or by necessary implication, by the adoption of the budget amendment to the constitution on November 7, 1922, this contention has been sufficiently answered by the decision of this court in the recent case of *Railroad Com.* v. *Riley, ante,* p. 54 [218 Pac. 415], holding to the contrary as to ordinary legislation in the form of special statutes previously enacted, creating and providing for the support of statutory boards and commissions. An even stronger reason exists why the initiative law here in question should not be held to have been abrogated by said constitutional amendment, since it is not only not inconsistent therewith but was adopted by the direct action of the electors simultaneously with their

adoption of said budget amendment, from which it must be implied that it was their intention that both should be given effect.

[3]   As to the respondent's contention that the provision of said initiative law relating to the deposit of the fees and collections of said Board of Osteopathic Examiners in a special fund in the state treasury and that the claims of said board for salaries and expenses should be drawn upon said fund and be payable out of the same, the decision in *Railroad Com.* v. *Riley, supra,* also applies; and it follows therefrom and from the provisions of section 433 of the Political Code that it was a duty specially enjoined by law upon the state controller to examine and settle the account of the petitioner herein and certify the same and the amount thereof to the state treasurer, to be by him credited to the special fund known as the "Board of Osteopathic Examiners Contingent Fund"; and it further follows from said decision that it was the duty of the respondent, upon the petitioners' demand therefor in due form, to draw his warrant upon the state treasurer upon said fund for the salaries of the secretary and stenographer of said Board of Osteopathic Examiners as prayed for in the petition herein. The fact that the board of control, in auditing the last-named claim of the petitioners herein, had apparently undertaken to change the source of payment of the petitioners' said claim from the special fund against which the same had been drawn to the "salaries" fund provided for in said budget bill, being an act unauthorized by law, and hence not within the power of the said board of control, cannot be held to affect the right of the petitioners to have their warrants drawn upon the proper fund nor the duty of the state controller to draw his warrant upon such fund. It is therefore ordered that a writ of mandate issue as prayed for in the petition herein.

Wilbur, C. J., Lawlor, J., Myers, J., Waste, J., Kerrigan, J., and Seawell, J., concurred.