[S. F. No. 11042. In Bank.—June 12, 1924.]

# BOARD OF FISH AND GAME COMMISSIONERS OF THE STATE OF CALIFORNIA, etc., Petitioner, v. RAY L. RILEY, State Controller, etc., Respondent.

[1] FISH AND GAME COMMISSION—STATUTES CREATING FISH AND GAME PRESERVATION FUND—BUDGET AMENDMENT AND BUDGET BILL—RE-PEALS.—The statutes of 1909 (Stats. 1909, p. 392) and 1911 (Stats. 1911, p. 807) creating the special fund in the state treas-ury known and designated as the fish and game preservation fund, as well as the several later enactments providing the sources of its accretion and the purposes of its disbursement under the direc-tion and approval of the Fish and Game Commission, created and constituted both a continuing fund and a continuing appropriation of the moneys deposited therein pursuant to said enactments, and said special fund so created and so to be disbursed was not ab-rogated or otherwise affected by the provisions of the budget amendment or budget bill either as originally enacted or as later modified by the action of the Governor in limiting the amounts of appropriation for salaries and support of the Fish and Game Com-mission, except in so far as the Governor's said action carried into the budget law might be held to impose a limitation upon the amount of money available to the commission during the biennium provided for in said budget bill.

[2] ID.—SECTION 680, POLITICAL CODE—INTENT.—The evident intent of the legislature in the use of the language found in the portion of section 680 of the Political Code which invests the board of con-trol, with the consent of the Governor, with power "to authorize the creation of deficiencies in any appropriations of money made by law in case of actual necessity," was that of empowering the board of control with the Governor's consent to validate or render legal in so far as lay within its power to do so, the expenditure of money by boards or officers of the state in excess of the sum or sums available for their respective expenditures by virtue of ap-propriations made by the legislature and in cases of actual neces-sity requiring such additional expenditures in order to the proper functioning of said respective agencies of the state.

[3] ID.—SECTION 680, POLITICAL CODE—CONSTRUCTION OF—DEFICIEN-CIES IN APPROPRIATIONS.—The clause in section 680 of the Political Code which provides that the board of control, having exercised the power to legalize the creation of deficiencies through the means of expenditures beyond the limit of a particular appropriation, "shall authorize the payment of deficiencies out of any money which may be appropriated for such purpose," renders applicable to the payment of said deficiency indebtedness any money which

either may have been or which may thereafter be appropriated for that purpose; and the "purpose" apparently intended by the phrase, "for such purpose," is that contemplated by the objects for the furtherance of which the particular board or officer was engaged in functioning and for which the specific appropriation had been made, and in the course of which its limitation in the matter of expenditures had been, or, in the judgment of the board of control, should be exceeded.

[4] ID. — FISH AND GAME PRESERVATION FUND — RESORT TO FOR EX-PENDITURES EXCEEDING APPROPRIATION — SECTION 680, POLITICAL CODE.—Whenever proper expenditures of the Fish and Game Commission to the payment of which the special fund in the state treasury known and designated as the Fish and Game Preservation Fund is appliable, though in excess of the amounts provided for the support and expenses of said commission by the specific limitations of the budget law, have been legalized and thus made available for such purpose, the action of the board of control, taken with the consent of the Governor under the provisions of section 680 of the Political Code, effectuates an authorized and thus legalized expenditure by said commission, and for the purposes of its functioning, of the sum named in the resolution of the board of control authorizing the same; and the action of the board of control as thus interpreted is not legislative in character since its effect is not to make an appropriation, but is merely to render available, to the extent of its allowance, an appropriation already made.

---

(1) 36 **Cyc.**, p. 894.   (2) 36 **Cyc.**, p. 891 (1926 Anno.).   (3) 36 **Cyc.**, p. 891 (1926 Anno.).   (4) 36 **Cyc.**, p. 891 (1926 Anno.).

PROCEEDING in Mandamus to compel State Controller to approve and draw his warrant for a certain claim payable out of the Fish and Game Preservation Fund.   Writ granted.

The facts are stated in the opinion of the court.

R. D. Duke for Petitioner.

Ralph W. Smith for Respondent.

RICHARDS, J.—The petitioner herein seeks a writ of mandate to compel the respondent as state controller to approve and draw his warrant for the claim of the petitioner for the sum of $301.56, which, according to the petitioner's contention, is now payable out of the fish and game preserva-

tion fund. The facts upon which the petitioner's said claim is predicated and which are not disputed on this proceeding are as follows: In the year 1909 the state legislature (Stats. 1909, p. 392) adopted an act providing for the creation of a special fund to be kept in the state treasury and be applicable to the payment of the expense of propagating, protecting, restoring, and introducing game fish into the public waters of this state and also to the propagation, protection, restoration, and transferring of game birds and animals in, and to their introduction into, this state, which fund was to be designated as the "Fish and Game Preservation Fund." The administration of said special fund was by an amendment to said act, adopted in 1911 (Stats. 1911, p. 807), placed in the hands of the Board of Fish and Game Commissioners and was made applicable to the payment of the expense of promoting the objects of its creation upon the approval of said board. From time to time thereafter this special fund was repleted from various sources but chiefly from the issuance of licenses for the exercise of the privilege of fishing or hunting and from fines collected for the violation of the fish and game laws of the state. (Stats. 1913, p. 986; 1915, p. 685; 1917, pp. 470, 688; 1921, p. 470.) From the time of the original creation of the special fund in 1909 down to the date of the adoption of the so-called budget amendment to the state constitution and to the passage pursuant to its terms of the budget act of 1923 no further act of appropriation by the legislature was made or was apparently deemed necessary to the full use of the money from time to time collected and deposited in this special fund, the foregoing acts being apparently deemed sufficient to create and provide for a continuing appropriation of the moneys in this fund to the purposes for which it was created. There is at present in this fund, according to the averment of the petition herein, a sum in excess of $280,000 applicable to the purposes of its creation.

At the general election of 1922 the so-called budget amendment to the state constitution was adopted (Const., art. IV, sec. 34) and thereafter and pursuant to its terms the Governor presented to the legislature of 1923 the budget provided for in said amendment, accompanied by an appropriation bill covering the proposed expenditures provided for in said budget and known as the budget bill. In the course

of its said session the legislature passed the act known as the budget act purporting to make the appropriations as outlined in said budget bill with such changes in and additions thereto as were deemed proper by the members of said legislature. In so doing, and in dealing with the matter of providing funds for the functioning of the Fish and Game Commission, the legislature undertook to appropriate ''For salaries, support and permanent improvements for the fish and game commission, such sum or sums as are provided in Chapter Two Hundred and fifty six, statutes of one thousand nine hundred nine and all amendments thereto, such payments to be made from the fish and game preservation fund created thereby'' (Stats. 1923, p. 242–253). The Governor, in the exercise of his constitutional power (Const., sec. 16, art. IV), objected to certain of the items of appropriation embraced in said budget bill as enacted by the legislature and appended to the said bill at the time of signing it a statement of the items to which he thus objected. Among these was the aforesaid item embracing the appropriation for the Fish and Game Commission. His objection thereto was in the following form:

''I object to the item on page 14 [253] under the heading 'Developmental' reading as follows: 'For salaries, support and permanent improvements for the fish and game commission, such sum or sums as are provided in chapter two hundred fifty-six, statutes of one thousand nine hundred nine and all amendments thereto, such payments to be made from the fish and game preservation fund created thereby,' and reduce the same to 'For salaries of officers and employees of the fish and game commission, four hundred thirty-eight thousand three hundred seventy dollars. For support of the fish and game commission, three hundred seventy-one thousand one hundred fifty dollars,' for the reason that the last named sums are ample. The amendments proposed by the legislature might leave the fish and game commission without any appropriation at all.''

The appropriation thus objected to and thus modified became a law, and thus the general allowance made by the legislature to the Fish and Game Commission of the full amount of money in the special fish and game preservation fund, created by the act of 1909, above referred to, and the amendments thereto, was by the Governor's said action

limited to the particular sums for salaries and support of the Fish and Game Commission specified in his said objection. It is to be noted, however, that the Governor did not in his said objection and specification as to the specific funds to be available during the biennium to the commission change the statement of the statute as to the particular fund from which the amounts therein provided for the salaries and support of the commission were to be paid.

In the several cases which have been brought before this court since the adoption of the budget amendment to the constitution and the passage and modification of the budget bill and law we have had occasion to interpret both of these organic and statutory forms of law. In the case of *Railroad Com.* v. *Riley, Controller, etc.*, 192 Cal. 54 [218 Pac. 415], it was held that the effect of the budget amendment and of the budget bill was not to work a repeal, either expressly or by implication, of the provisions of the Public Utilities Act (Stats. 1915, p. 115) creating the "Railroad Commission Fund" and appropriating the same to the uses of the commission, but that said act and said fund remained and were valid existing provisions of law. In the case of *Jamme* v. *Riley, etc.*, 192 Cal. 125 [218 Pac. 578], it was held that the effect of the budget amendment and budget bill was not to repeal the act of 1921 (Stats. 1921, p. 980), providing for the better education of nurses and creating a special fund for the purpose upon which warrants by the state controller were to be drawn, but was that of placing a limitation upon the amounts available for such purposes from such existing and special fund. In the case of *Western Shore Lumber Co.* v. *Riley, etc.*, 192 Cal. 144 [218 Pac. 761], it was held that the adoption of the budget amendment and enactment of the budget bill did not repeal the act of 1917 (Stats. 1917, p. 1281) creating a special fund for the enlargement of California Redwood Park and making a continuing appropriation therefor to be placed in a special fund upon which warrants for such purposes were thereafter to be drawn. In the case of *Osteopathic Examiners, etc.*, v. *Riley, etc.*, 192 Cal. 158 [218 Pac. 1018], it was held that the initiative law of 1922 [Stats. 1923, p. xciii] providing for the formation of a board of osteopathic examiners and for the creation through a system of fees and collections of moneys for the support of said self-sustaining board which

were to be deposited in the state treasury in a special fund upon which warrants were to be drawn for the salaries, costs, and expenses of said board was not repealed or modified in this respect by the provisions of the budget amendment or budget bill. In this case also the appropriation provided for in said initiative law as well as the special fund into which the moneys derived from its operation were to be placed was in the nature of a continuing appropriation of such moneys to such purposes and to such special fund. In the case of *Riley, etc.,* v. *Forbes, etc.,* 193 Cal. 740 [227 Pac. 768], it was decided that the provisions of the act of 1901 (Stats. 1901, p. 645), creating the State Board of Accountancy, providing for the charge, collection, and expenditure of fees in the course of its functioning to pay the current expenses of such self-sustaining board was not repealed by the provisions of the budget amendment nor abrogated by the provision of the budget bill (Stats. 1923, p. 247) making a specific appropriation for the support of the State Board of Accountancy but not specifying any particular fund upon which the warrants for such appropriations should be drawn, and that the State Board of Accountancy, notwithstanding the foregoing specific appropriation in the budget bill or any other provision contained therein, had a right to have its said fund retained in the form of its original creation and expended to the limit of said appropriations, but otherwise unaffected by the provisions of the budget amendment and budget bill. In the still more recent case of *Riley, etc.,* v. *Thompson, etc.,* 193 Cal. 773 [227 Pac. 772], it was held that the petitioner, as state controller, was not entitled to a writ of mandate to compel the payment into the general fund in the state treasury of the moneys charged in fees and collected by the board of pilot commissioners under earlier acts and later sections of the Political Code creating said board, providing for the collection of such fees and for the disbursement as heretofore of a certain portion thereof directly by said board; and that as to such disbursements section 2460 of the Political Code providing therefor was unaffected by the provisions of the budget amendment or budget bill. **[1]** The effect of the foregoing decisions by this court upon the situation presented by the instant case is to establish as settled law the proposition that the statutes of 1909 and 1911 creating the special fund in

the state treasury known and designated as the fish and game preservation fund, as well as the several later enactments providing the sources of its accretion and the purposes of its disbursement under the direction and approval of the Fish and Game Commission, created and constituted both a continuing fund and a continuing appropriation of the moneys deposited therein pursuant to said enactments and that said special fund so created and so to be disbursed was not abrogated or otherwise affected by the provisions of the budget amendment or budget bill either as originally enacted or as later modified by the action of the Governor above referred to, except in so far as the Governor's said action carried into the budget law might be held to impose a limitation upon the amount of money available to the commission during the biennium provided for in said budget bill. The effect of these rulings upon the instant situation would seem to compel the conclusion that the special fund created by the act of 1909 and subjected to the control of the Fish and Game Commission under the amendment to said act made in 1911 and known and designated as the "Fish and Game Preservation Fund" still exists and is still applicable to the uses and necessities of the Fish and Game Commission, and that the appropriation of the moneys collected therefor and deposited therein under the various acts of the legislature relating thereto constitutes a continuing appropriation of such moneys to such uses and necessities; that the applicability of the moneys deposited in such fund to such uses and necessities has not been affected by the provisions of the budget amendment or budget bill or by the action of the Governor in his modification of the terms of said budget bill, but that the present availability of whatever balance remains and is in said special fund has been limited by and to the specific sums set forth in the Governor's said modification to said budget bill and which became in due course a part of the present budget law.

This conclusion brings us to the particular situation presented by the instant proceeding. The petitioner herein alleges in effect that on the twenty-eighth day of January, 1924, there existed in the fish and game preservation fund a sum of money in excess of $280,000, consisting of moneys received from sales of hunting and fishing and other licenses and from fines and forfeitures imposed under and by virtue of

the various acts of the legislature providing for such accretions to such fund; that on the said twenty-fourth day of January, 1924, there existed a deficiency in the funds presently available to the Fish and Game Commission due to the exhaustion of the support appropriation for the Fish and Game Commission for the seventy-fifth fiscal year as appears from the contents of exhibit "A," appended to and made a part of its petition. The support appropriation thus referred to has reference evidently to the amounts allowed to the Fish and Game Commission in the budget bill as modified by the Governor's action thereon and which amount had upon said date been equaled or exceeded by the expenditures of the commission since the going into operation and effect of the provisions of the budget law. The petition proceeds to allege that upon the twenty-eighth day of January, 1924, the board of control, acting under the provisions of section 680 of the Political Code and with the approval of the Governor as provided for in said section, authorized the creation of a deficiency to the extent of $5,695 in said appropriation upon the finding by said board of control that said appropriation had been exhausted and that there existed an actual and unavoidable necessity for the creation of such deficiency in order to meet the expenses of the commission for the balance of said fiscal year. The action of the board of control and of the Governor in so finding and in so doing is set forth in the resolution of that body with the Governor's approval indorsed thereon appended to said petition. The petitioner alleges that thereafter and pursuant to such action it duly issued and presented its duly audited claim for the sum of $301.56, representing a proper expenditure by said commission for supplies incident to its activities, which said claim after being duly audited and approved by the board of control was presented to the state controller, the respondent herein, in order to have a warrant therefor drawn upon the state treasury for the payment of said claim; that the said controller refused to draw his warrant therefor upon the ground, as set forth in his letter of refusal appended to said petition, that no appropriation has been made by the legislature for the payment of said claim. Wherefore the petitioner herein applies for a writ of mandate to compel the respondent to draw his warrant upon the proper fund in the state treasury for the payment of said

claim.  The immediate question which is presented for our consideration upon the foregoing state of facts is that of the interpretation to be placed upon and the effect to be given section 680 of the Political Code and to the action of the board of control thereunder and with the approval of the Governor as provided for therein.  Section 680 of the Political Code was first enacted in its present form in the year 1911 and in the course of a revision by the legislature of article XVIII of title 1, part 3, of said code, by which revision the board of control was created and invested with the powers and duties which it has since exercised.  It may be stated incidentally, but not unimportantly, that the board of control was created and proceeded to function coincidentally with the creation and functioning of a goodly number of other boards and commissions which, in that or the immediately following sessions of the legislature, were invested as agencies of the state with a variety of powers and duties which involved the collection and expenditure of public money derivable through their varied activities and to be expended in their diversified activities.  Section 680 of the Political Code reads as follows:

"The board, with the consent of the governor, shall have power to authorize the creation of deficiencies in any appropriations of money made by law in cases of actual necessity and shall authorize the payment of deficiencies out of any money which may be appropriated for such purpose. No deficiency shall be authorized except upon the written authority, first obtained, of a majority of the members of the board and of the governor.  Any indebtedness attempted to be created against the state in violation of these provisions shall be null and void, and shall not be allowed by the board of control or the controller."

[2]  The portion of said section which first requires interpretation is that wherein the board of control, with the consent of the Governor, is invested with power "to authorize the creation of deficiencies in any appropriations of money made by law in cases of actual necessity."  The evident intent of the legislature in the use of this language was that of empowering the board of control with the Governor's consent to validate or render legal, in so far as lay within its power to do so, the expenditure of money by boards or officers of the state in excess of the sum or

sums available for their respective expenditures by virtue of appropriations made by the legislature and in cases of actual necessity requiring such additional expenditures in order to the proper functioning of said respective agencies of the state. This is an entirely reasonable interpretation to be given to said clause in said section, and applying it as thus interpreted to the immediate case before us, it would mean that the appropriation which had been made by the legislature of 1923 in the budget law for the functioning of the Fish and Game Commission for the seventy-fifth fiscal year, having been exhausted and an actual necessity for further expenditures in excess of that appropriation having arisen, as found by said board of control, that body was granted power by the terms of said section of the Political Code and with the consent of the Governor, to legalize a further expenditure of money by the Fish and Game Commission in excess of the specific amount provided for in said appropriation. Thus far the interpretation to be given the section of the code in question is apparently plain sailing. The effect, however, of the exercise of the foregoing power by the board of control with the Governor's consent is to be determined by the succeeding clause in said section, which provides that the board of control, having exercised the power to legalize the creation of deficiencies through the means of expenditures beyond the limit of a particular appropriation, "shall authorize the payment of deficiencies out of any money which may be appropriated for such purpose." It is the contention of the respondent herein that this clause in said section, read in conjunction with the clause which preceded it, means no more than that the board of control, which has thus authorized a particular board or officer of the state to create an indebtedness in excess of the limitations of the specific appropriation applicable to its expenditures, can only be granted authority to have such expenditure liquidated by the act of some subsequent legislature consenting to make an appropriation "for that purpose." It is undoubtedly true that such would be the effect of the action of the board of control, with the Governor's consent, in authorizing the creating of an indebtedness by any state agency in excess of its specific appropriation if there were no other available means by which such excess indebtedness could

be liquidated, except by a future legislative act making an appropriation for such purposes; but it would seem that if that were the full extent of the meaning to be given to this second clause in said section in the code it would have been unnecessary to include it in the section at all, since the legalizing of an expenditure by such board of an amount in excess of its specific appropriation would in itself be sufficient to create a legal obligation against the state. It is true it would not be an enforceable obligation in the absence of an act of the legislature providing for its payment, but it would still be sufficient to create a moral obligation upon the legislature to make such appropriation and would also suffice to furnish such a consideration for its action in that regard as would serve to avoid the constitutional prohibition against the gift of public money. [3] It would thus seem that the said second clause in said section, if deemed necessary to the section at all, must be given a broader meaning .than that which the respondent herein would have us assign to it. The clause reads that the board, etc., "shall authorize the payment of deficiencies out of any money which may be appropriated for such purpose." It would appear at first glance that this clause, which is phrased subjunctively as to its mood, is not phrased in the future tense and hence that without doing any violence to its grammatical construction it may be given a meaning which would render applicable to the payment of said deficiency indebtedness any money which either may have been or which may thereafter be appropriated for that purpose. This interpretation would also supply a reason for the inclusion of this clause in said section of the code since as to any moneys which had theretofore been appropriated, but were not in the absence of such authorization available, some such authorization would be required, while, as we have seen, it would not be required or necessary to justify or legalize a future legislative appropriation. The respondent, however, contends that the concluding phrase in said clause reading, "for such purpose," is to be given the limited meaning which would confine the appropriation mentioned to an appropriation made for the purpose of providing for such deficiency, thus of necessity limiting the applicability of said clause to future appropriations. We think, however, the phrase "for such purpose" can be given a broader

meaning and one more in harmony, not only with what we deem the spirit and purpose of the section as a whole, but also more in keeping with our interpretation of the other clauses and portions thereof already passed under review. The ''purpose'' apparently intended by this phrase is that contemplated by the objects for the furtherance of which the particular board or officer was engaged in functioning and for which the specific appropriation had been made, and in the course of which its limitation in the matter of expenditures had been, or, in the judgment of the board of control, should be exceeded. Such an interpretation would be entirely in harmony with our construction of this clause in said section as a whole since whatever existing appropriation might by the action of the board of control with the Governor's consent be authorized to be applied to the payment of such legalized indebtedness would of necessity be an appropriation which had been made for the purpose of paying those expenditures which the activities of the particular state agency seeking such relief had required.

The practical wisdom of this interpretation of said section will be apparent when we consider that the policy of our law is to discourage, if not forbid, except in cases of actual necessity, or of expenditures in permanent public improvements in excess of existing revenues, the creation of interest-bearing burdens upon the state or any of its operative agencies. [4] Again applying these conclusions to the facts of the instant case and to the state of the law relating to the special fund in the state treasury known and designated as the fish and game preservation fund and to its condition and applicability to the purpose of the payment of the proper expenditures of the Fish and Game Commission, whenever such expenditures, though in excess of the amounts provided for the support and expenses of said commission by the specific limitations of the budget law, have been legalized and thus made available for such purpose, we are of the opinion that the action of the board of control, taken with the consent of the Governor under the aforesaid provisions of section 680 of the Political Code, has been to effectuate an authorized and thus legalized expenditure by said commission, and for the purposes of its functioning, of the sum named in the resolution of the board of control authoriz-

ing the same. The action of the board of control as thus interpreted is not legislative in character since its effect is not to make an appropriation, but is merely to render available, to the extent of its allowance, an appropriation already made.

It is our conclusion that such expenditure, being thus authorized, is payable out of said special fund upon which a claim, properly drawn and audited, has been presented to the state controller, and that he should be and is hereby directed to draw his warrant upon the state treasury and upon said special fund for the payment therefrom of said claim.

Let the writ issue accordingly.

Lawlor, J., Seawell, J., Lennon, J., Myers, C. J., Shenk, J., and Waste, J., concurred.