[Crim. No. 151. Fourth Appellate District.—April 29, 1933.]

In the Matter of the Application of ORVILLE BRYSON for a Writ of Habeas Corpus.

Bradley & Bradley and J. M. Lopes for Petitioner.

Walter C. Haight, District Attorney, and Robert K. Meyers, Deputy District Attorney, for Respondent.

BARNARD, P. J.—The petitioner was charged by complaint with two violations of what is commonly called the Wyllie Local Option Law (Stats. 1911, p. 599). In the first count it was charged that on the twenty-eighth day of March, 1933, within the city of Visalia, county of Tulare, the petitioner, in violation of the law referred to, sold certain described alcoholic liquor containing more than one per cent of alcohol by volume. In a second count it was charged that on the same day and in the same place he violated the same law in that he unlawfully had in his possession another described quantity of alcoholic liquor containing more than one per cent of alcohol by volume. The respondent sheriff justifies his retention of petitioner by producing a commitment in regular form.

No facts are in dispute and petitioner relies entirely upon the contention that the complaint does not state any offense for the reason that the Wyllie Local Option Law has been repealed. It is conceded that there is no other law on the subject in the city of Visalia, and the only question here presented is whether or not the Wyllie Act was repealed by implication through the adoption of what is known as the Wright Act (Stats. 1921, p. 79).

The respondent cites *People* v. *Capelli,* 55 Cal. App. 461 [203 Pac. 837], and *People* v. *Collins,* 54 Cal. App. 531 [202 Pac. 344], as decisive of the question before us. It was held in those cases, and particularly in the Capelli case, that the Wyllie Act was not superseded or rendered inoperative by the Volstead Act and was not repugnant to or inconsistent with that act, for the reason that, under the second section of the Eighteenth Amendment to the United States Constitution, the several states have concurrent power to enforce the provisions of section 1 of that amendment by appropriate legislation, and because the Wyllie Act, in so far as it went, operated in furtherance of the purposes of the amendment referred to. At the time those cases were decided the Wyllie Local Option Law was the only general law on the subject in this state. Later the Wright Act was adopted and the question now before us is not as to the effect of this state legislation in view of existing national laws on the same subject, but is as to the effect of the later upon the earlier of these state laws.

The effect of the Wright Act upon various local ordinances has been passed upon in a number of cases (*In re Mingo*, 190 Cal. 769 [214 Pac. 850]; *In re Iverson*, 199 Cal. 582 [250 Pac. 681]; *In re Simmons*, 199 Cal. 590 [250 Pac. 684]; *Olivieri* v. *Police Court of Bakersfield*, 62 Cal. App. 91 [216 Pac. 447]). It has been held that the Wright Act did not prevent local communities from making additional or more stringent regulations than those provided in that act, so long as these were in keeping with the purpose of the act and not in conflict therewith. So far as we are informed, the question now before us has not heretofore been passed upon.

 While the repeal of statutes by implication is not favored (*Railroad Commission of California* v. *Riley*, 192 Cal. 54 [218 Pac. 415]), it is the general rule that a statute is repealed by a subsequent statute, even in the absence of any repealing clause, when it is apparent that the legislature must have intended such a result (*Earle* v. *Board of Education*, 55 Cal. 489; *Christy* v. *Board of Supervisors of Sacramento*, 39 Cal. 3). In the last-named case the court said:

"A statute may be repealed by express words, or by necessary implication. The latter takes place whenever, by subsequent legislation, it becomes apparent that the legislature did not intend the former act to remain in force. If a later statute be wholly repugnant to an older one, so that, upon any reasonable construction, they cannot stand together, the first is repealed by implication, though there are no repealing words. The reason is, that the last expression of the legislative will must prevail, and must supersede all prior legislation which is entirely inconsistent with it."

And an intention to repeal the prior statute is necessarily implied whenever there appears such an irreconcilable conflict and repugnancy between the provisions of two acts that they cannot be reasonably construed as standing together (*Fraser* v. *Alexander*, 75 Cal. 147 [16 Pac. 757]; *People* v. *Burt*, 43 Cal. 560; *Mansfield* v. *Chambers*, 26 Cal. App. 499 [147 Pac. 595]). The purpose of the Wyllie Local Option Law is thus expressed in its title:

"An act to provide for the regulation of the traffic in alcoholic liquors by establishing local option; authorizing the filing of petitions praying for elections to vote upon the

question whether the sale of alcoholic liquors shall be licensed within the territory described in such petitions; providing for the calling and holding of such elections; making it the duty of the proper governing body to declare such territory to be no-license territory unless a majority of votes is cast in favor of license; providing that no licenses, permits or other authority to sell or distribute alcholic liquors in no-license territory shall be granted; forfeiting and declaring void all such licenses or permits theretofore issued and in force; making it a penal offense to sell, give away or distribute alcoholic liquors within such territory, with certain exceptions; and providing penalties for such offenses.''

The purpose of the Wright Act is thus expressed in its title:

''An act to enforce the provisions of Article Eighteen of the amendments to the Constitution of the United States; prohibiting all acts or omissions prohibited by the Volstead Act; imposing duties on courts, prosecuting attorneys, sheriffs and other officers, and extending their jurisdiction; and providing for the disposition of fines and forfeitures.''

The Wyllie Local Option Law, while a state law, became effective in a particular community only by vote of the people therein. When it became effective in any community its prohibitive provisions applied to intoxicating liquors containing more than one per cent of alcohol by volume. So far as any state law is concerned, after the adoption of the Wyllie Act, the sale of alcoholic liquors containing not more than one per cent of alcohol by volume was permitted and was legal everywhere in the state, and the sale of such liquors containing more than one per cent of alcohol by volume was permitted and was legal in any portion of the state in the absence of the adoption, by the voters of any particular district, of a contrary regulation as permitted by the act. The subsequently adopted Wright Act had the effect of prohibiting and forbidding the sale of liquor containing more than one-half of one per cent of alcohol by volume, and applied throughout the state regardless of the action of any particular community. This act not only took away from the people of any community the right to decide by election whether or not liquors containing more than one per cent

of alcohol could be lawfully sold therein, but went much further than the provisions of the Wyllie Act in those places where the same had been put into effect, by prohibiting the sale and possession of such liquors as contained more than one-half of one per cent of alcohol and not more than one per cent of alcohol, such liquor not being within the purview of the earlier act.

It could hardly be argued that while the Wright Act was in effect those provisions of the Wyllie Local Option Law which permitted the people of any particular community to decide by election whether liquor should be legally sold in that community, were also in effect. Nor that while the Wright Act was in effect the former implied right to sell liquors containing up to one per cent of alcohol was still in effect. It seems perfectly plain that the legislature, in passing the Wright Act with its universal application and much more stringent provisions, could not have intended to leave the Wyllie Local Option Law in full force and effect. It is contrary to reason and good sense to suppose that such could have been the intention, when the provisions of the Wright Act are so inconsistent and so conflicting with those of the earlier act. During the time it was in effect the Wright Act absolutely prohibited many things that were perfectly legal under the Wyllie Act, not only in those communities which had by election come within its provisions, but elsewhere. Under the provisions of the Wyllie Local Option Law it was legal to sell intoxicating liquors containing not more than one per cent of alcohol by volume in any part of the state, while under the provisions of the Wright Act, such liquor which contained more than one-half of one per cent of alcohol could not be legally sold anywhere within the state. Under the Wyllie Act the sale of liquor of any alcoholic content was legal, so far as that act went, in such places as had not come by election within the prohibitive provisions of the act, while under the Wright Act, even in those places, legal sales of liquor were confined to those containing not more than one-half of one per cent of alcohol. It can hardly be said that a state statute making such acts illegal is not inconsistent and conflicting with another state statute which does not make the same acts illegal, but which, by every reasonable inference, allows and permits the same as within the law. ■ We are forced to

conclude that the Wright Act, its provisions being in conflict with those of the Wyllie Local Option Law and prevailing over the same, had the effect of repealing, by implication, the earlier act. If this conclusion is correct and the Wyllie Local Option Law was repealed by the adoption of the Wright Act, the later repeal of the last-named act cannot have the effect of reviving the act so repealed (sec. 328, Pol. Code).

The petitioner is discharged.

Marks, J., and Jennings, J., concurred.