[Civ. No. 9732. Second Appellate District, Division One.—December 2, 1935.]

DAVID G. GUSTASON, Appellant, v. BOARD OF OSTEO-PATHIC EXAMINERS OF THE STATE OF CALIFORNIA et al., Respondents.

Wm. G. Condron for Appellant.

Otis D. Babcock for Respondents.

ROTH, J., *pro tem.*—Appellant appeared before the above-entitled board and the members thereof on a complaint filed with said board, charging appellant with unprofessional conduct under subdivision third, section 14, chapter 354, of the Statutes of 1913. Unlawful advertising is forbidden by the said section to members of the medical profession. The pertinent portion of said section reads as follows:

"All advertising of medical business which is intended or has a tendency to deceive the public or impose upon credulous or ignorant persons, and so be harmful or injurious to public morals or safety." (Stats. 1913, p. 733.)

From the evidence, the respondent board found that appellant had in separate listings in the telephone directory of the city of Los Angeles advertised and held himself out to the public as a specialist in the following services, illnesses

and diseases: Accident, illness, health service, blood diseases, cancer, eye, ear, genito-urinary, goiter, hemorrhoid, hernia, lung, men's diseases, nervous diseases, nose, plastic surgery, general surgery, skin diseases, syphilis, throat, tonsil, women's diseases, X-ray and clinical services, blood pressure, bone, chest and children's diseases, epilepsy, gland, heart, kidney diseases, and practically everything else known to the science of medicine and surgery.

Appellant was found guilty by the board of the violation of the section quoted, and his license was revoked. On petition for a writ of review in the superior court and on a hearing pursuant thereto, the writ was denied. This appeal is from the judgment of the superior court denying the petition for review.

█ Appellant's first contention is that the law creating defendant board is unconstitutional. The legality of the board is, however, settled. (*Board of Osteopathic Examiners* v. *Riley,* 192 Cal. 158 [218 Pac. 1018]; *Suckow* v. *Alderson,* 182 Cal. 247, 250 [187 Pac. 965].)

█ The next contention of appellant is that the allegations of specific misconduct in the complaint upon which he was tried by the defendant board were by way of recital, and that any other allegations in said complaint charged misconduct in the general language of the statute and were therefore insufficient. We do not find that the allegations of specific misconduct were by way of recital. On the contrary, the original complaint is replete with numerous allegations of specific acts of false advertising. But even if the allegations were by way of recital, a general charge in the language of the statute is sufficient. (*Suckow* v. *Alderson, supra; Winning* v. *Board of Dental Examiners,* 114 Cal. App. 658 [300 Pac. 866].)

█ As to the sufficiency of the evidence to support the finding of the board to the effect that appellant advertised with the intention to deceive or impose upon credulous or ignorant persons and in such a manner as was harmful to public morals and safety, we adopt the opinion by the learned trial judge filed at the time decision was pronounced denying the petition for review:

"We now come to a consideration of the principal question in the case—does the listing of petitioner in the 'Buyers' Guide' as a 'specialist' in some twenty or more ailments or

diseases constitute unethical or unprofessional advertising? Did it have a tendency to deceive the public and impose on credulous persons? Was it harmful and injurious to public safety? To properly answer these questions, some consideration must be given to that part of the record dealing with the nature and extent of the petitioner's professional training. It appears that he is a graduate of the College of Osteopathic Physicians and Surgeons, class of 1917. While attending the college he served as an interne for three months; while in the United States army in 1918 petitioner did some X-ray work at Fort Oglethorpe, Ga., and for three or four months assisted in giving anaesthetics at a government hospital at McDonald Field. No post-graduate work was ever done by the petitioner, nor has he taken any special training in any hospital or medical college as to any of the branches of medicine and surgery in which he styled himself as a specialist. Under examination by members of the board he was unable to name a standard work on some of the various branches of medicine in which he represented himself to be an expert and it further appears that at the date of the hearing he had only performed two operations over a period of five years.

"The claims of the petitioner as reflected in his listings in the 'Buyers' Guide' were manifestly extravagant and false and inserted for the purpose of attracting to his office credulous and ignorant people who knew nothing of petitioner's professional background and experience. His advertisements in the 'Buyers' Guide' indicated that he was equally ready to *treat as a specialist* such unrelated diseases as syphilis and cancer—tuberculosis and women's diseases—hemorrhoids and nerves—ear, eye, nose and throat and epilepsy—stomach diseases and skin diseases; and his surgical talents (as a specialist) were advertised to cover so wide a field as goiter, facial plastic surgery, bone surgery, ocular plastic surgery, and others. And in addition to all of the foregoing, he claimed to be an X-ray specialist.

"Eminent doctors, both of the allopathic and homeopathic schools, testified before the board that no doctor in the ordinary span of life could specialize in the many diseases of the human body and mind enumerated in petitioner's listings. 'One who holds himself out as a specialist in the treatment of a certain organ, injury or disease,' says Mr. Presiding Justice Conrey, 'is bound to bring to the aid of one so employing him,

that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to that particular organ, injury or disease, its diagnosis and its treatment, in the same general locality, having regard to the state of scientific knowledge at the time'. (*Hopkins* v. *Heller*, 59 Cal. App. 452 [210 Pac. 975].) Is the medical profession helpless to protect its good name and the public interest against the palpably false claims of such a charlatan? Is it not against the public safety to permit a man utterly without specialized training, post-graduate work, or research experience to hold himself out as a specialist in bone surgery, when upon his own admission he has not performed more than two operations in five years? And is it not dangerous to the public welfare for such a man to treat as a specialist such a dread disease as syphilis, when he shows himself so ignorant (as the record indicates) as not to know the name of the manufacturer of the specific medicine commonly employed in its arrest and cure? Unless we are prepared to concede that the State has no interest to protect the health and lives of its citizenry and is ready to surrender its power of supervision over the practice of the learned professions we must conclude that upon the record as made, it was not only within the power of the Board of Osteopathic Examiners to discipline the petitioner but that it would have been derelict in its duty if it had failed to take official cognizance of his unprofessional conduct.''

The judgment is affirmed.

Houser, P. J., and York, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 30, 1936.