[S. F. No. 424. In Bank.—March 18, 1896.]

JOHN C. BATEMAN ET AL., PETITIONERS, *v.* E. P. COLGAN, CONTROLLER OF THE STATE OF CALIFORNIA.

SAN FRANCISCO DEPOT ACT—POWERS OF HARBOR COMMISSIONERS—POLITICAL CODE—STATE BUILDING LAW.—The San Francisco depot act of 1891 was not intended to confer any additional power upon the harbor commissioners, except the single one of enabling them to anticipate their revenues, and to create an indebtedness for the building of such depot, which the board, by reason of the restrictions of sections 2526 and 2527 of the Political Code, did not theretofore possess; and the provision of the act, that the commissioners should construct such depot "in the manner and method authorized by law," refers to the provision of the Political Code governing the harbor commissioners, and not to the general public buildings act of the state.

ID.—STATUTORY CONSTRUCTION—REPEAL BY IMPLICATION—SPECIAL ACT NOT REPEALED BY GENERAL LAW.—The law does not favor a repeal by implication; and when two statutes treat of the same subject, one being special, and the other general, unless they are irreconcilably inconsistent, the latter, though the later in date, will not be held to have repealed the former, but the special act will prevail in its application to the subject matter, so far as coming within its particular provisions.

ID.—GRANT OF IMPLIED POWER—EMPLOYMENT OF ARCHITECT.—Where
power is given to perform an act, the authority to employ all necessary
means to accomplish the end is implied by law; and the grant of power
to construct a depot building implies power to employ an architect.

Petition in the Supreme Court for a writ of *mandamus*
to the controller of state.

The facts are stated in the opinion of the court.

*Sullivan & Sullivan, F. S. Stratton,* and *Edward R.
Taylor,* for Petitioners.

The building law adopted March, 1876, did not repeal
the harbor commission law as amended in February,
1896. (*Merrill* v. *Gorham,* 6 Cal. 41, 43; *People* v. *Wells,*
11 Cal. 339; *Crosby* v. *Patch,* 18 Cal. 443; Smith's
Commentaries, secs. 639–41; *Talcott* v. *Harbor Commrs.*,
53 Cal. 200; *Van Denburgh* v. *Greenbush,* 66 N. Y. 3;
*Home for Inebriates* v. *Reis,* 95 Cal. 147, 148; Cooley's
Constitutional Limitations, 6th ed., 182.) General laws
will not impliedly repeal those which are special or
local. (Sutherland on Statutory Construction, sec. 157;
*McGivney* v. *Pierce,* 87 Cal. 125; *People* v. *Tyler,* 36 Cal.
524; Stats. 1891, p. 457.)

*W. F. Fitzgerald, Attorney General,* and *W. H. Ander-
son, Assistant Attorney General,* for Respondent.

The depot building is not such a building as the har-
bor commissioners were authorized to construct under
the Political Code, and their general powers under that
code are limited. (Pol. Code, secs. 2524, 2526.) The
manner and method authorized by law for the construc-
tion of a state building of this character is not the
Political Code, but the general building laws of the
state. (Stats. 1875, pp. 427–33; Stats. 1891, p. 457;
Stats. 1895, p. 257.)

VAN FLEET, J.—This is an original application to this
court for the writ of mandate to require the respondent
as state controller to draw his warrant against the "San
Francisco Depot Fund," in the state treasury in pay-

ment of a demand in favor of petitioners, arising under a contract awarded them by the board of state harbor commissioners for furnishing certain work and material in the construction of the new railroad ferry and passenger depot, provided for by the act of the legislature designated the " San Francisco depot act." (Stats. 1891, p. 110.)

The real purpose of the proceeding is to secure a determination of the question, about which controversy has arisen, as to which one of two somewhat divergent statutes controls said commissioners in proceeding to carry out the purposes of said depot act; i. e., whether in adopting plans and letting contracts for such purpose they should follow the method pointed out in the provisions of the Political Code giving them control of the San Francisco harbor and water front, or whether they are governed therein by the provisions of an act commonly known as the " Public Buildings Act " (Stats. 1875–76, p. 427), which latter act, besides certain other minor differences in method, requires the plans, estimates, etc., to be submitted for approval to the governor, treasurer, and secretary of state, and the contracts thereunder to be certified by the attorney general before commencing construction.

Said depot act provides that the commissioners shall construct such depot "in the manner and method authorized by law"; and, in taking steps for the erection of such depot building, the commissioners have thus far, under the advice of counsel, proceeded according to the provisions of the Political Code, and particularly section 2524 thereof, wherein is provided the steps to be taken by them as to advertising for proposals, letting contracts, etc., in making improvements upon the harbor front, in instances involving an expenditure of more than three thousand dollars; and it was in pursuance of such proceedings that the contract of petitioners was let.

The objection of respondent, and the ground of his refusal to draw his warrant, is that the commissioners should have followed the requirements of said public

buildings act, and that their proceedings thus far in the premises are void.   His argument is, in brief, that the building of such a structure as that provid d by the depot act is not within the general powers of said commissioners conferred by the provisions of the code; that such power is a special one, derived solely from said depot act; that the building thus provided for is a public building within the purview of said general building act, and that when the legislature provided that it should be constructed "in the manner and method authorized by law," it referred by this language to the general building law, and not to the special provisions of the code governing the harbor commissioners, and must be held to have placed the construction of said depot under the provisions of said general act.

We discover nothing substantially tending to support this contention, but it involves, in our judgment, a misconstruction of both the provisions of the code and those of the depot act.   The latter act, as we construe it, was neither intended to, nor does it, confer any additional power upon the board of harbor commissioners, except the single one of enabling said board to anticipate their revenues and create an indebtedness for the building of such depot, which, by reason of the restrictions of sections 2526 and 2527 of said code, the board did not theretofore possess.   That but for such restrictions the board possessed ample authority at any time to provide a suitable building of the kind, for the convenience and need of the public, there can be no question.   The provisions of sections 2520–53 of the Political Code provide a very complete and comprehensive scheme for the government of the harbor of San Francisco and its water front (so far, at least, as the same is within state control), and vest such control and management exclusively, with certain exceptions not pertinent here, in said harbor commissioners.   By section 2524 the board is authorized, among other things, to construct, repair, and maintain "all the wharves, piers, quays, landings, and thoroughfares the wants of commerce may require,

and generally to *erect all such improvements* as may be necessary for the safe landing loading, and unloading, and protection of all classes of merchandise, *and for the safety and convenience of passengers* passing into and out of the city and county of San Francisco."

Under this very broad and plenary grant of power, the only obstacle in the way of such an "improvement" by that board as that contemplated by the depot act was the want of funds from its ordinary source of revenue to erect a building of the cost and character needed, and it was this obstacle, arising from the limitations upon the power of the board above adverted to, which the depot act was evidently designed to remove. This purpose of the act is found expressed in its initial section, which provides that "for the purpose of providing a fund for the payment of the indebtedness hereby authorized to be incurred by the board of state harbor commissioners for the erection and furnishing of a general railroad, passenger, and ferry depot at or near the foot of Market street, in the city and county of San Francisco, at a cost not to exceed six hundred thousand dollars, which the said board of harbor commissioners are hereby authorized to construct, in the manner and method authorized by law, and at a cost not to exceed six hundred thousand dollars, the state treasurer shall, immediately after the issuance of the proclamation of the governor, hereinafter provided, prepare suitable bonds of the state of California," etc. The words " hereby authorized to construct" are not to be taken, in view of the foregoing provision of the code, as conferring any additional power upon the board to that already possessed, but as a legislative declaration, in keeping with the primary purpose of the act, that the needs of commerce and the public required, in the judgment of the legislature, that the erection of such building should be proceeded with. And it was doubtless in full recognition and contemplation of the very general power and control vested in said board under the provisions of the code that the legislature wholly refrained in said

depot act from making any direction or specification
whatsoever as to the character, style, plan, or dimensions
of the structure to be erected, leaving all matters of
detail wholly to the wide discretion vested in said com-
missioners, and limiting them solely as to the matter
of total expenditure. And it must be assumed in the
absence of any express declaration showing a different
intent, that in directing the board to proceed "in the
manner and method authorized by law" reference was
had to the manner and method for making improve-
ments provided in the law governing said board. That
this was the intention of the framers of the law, and
that it was intended that the work was to be intrusted
solely to said board, is further strongly indicated by the
requirement of section 4 of the act, that the proceeds of
the sale of the bonds therein provided for shall be kept
in a separate fund, to be designated the "San Francisco
depot fund," and used only for the erection and furnish-
ing of said depot; and that "drafts and warrants upon
said fund shall be drawn upon and shall be paid out of
said fund *in the same manner* as drafts and warrants are
drawn upon and paid out of the San Francisco harbor
improvement fund."

It is further contended, however, that the provisions
of section 2524 for advertising and letting contracts, etc.,
under which petitioners are proceeding, were superseded
or repealed by the provisions of the public buildings act.
This claim is based upon the fact that section 2524,
which still remains the same in that respect, was ap-
proved February 28, 1876, and that said building act
was approved March 21, 1876, nearly one month later;
and the contention is that the provisions of the two acts
being inconsistent the latter must prevail. But we dis-
cover no necessary inconsistency. The public building
act is a general law applying to all boards, commissioners,
and officers, without special designation, charged with the
erection of any state asylum or other improvement; sec-
tion 2524 is a part of a special act, applicable to one partic-
ular board, and it is well settled that statutes bearing upon

the same subject matter must, if possible, be construed together, and that a general provision will be controlled by one that is special.   It is not pretended that there is any express repeal, and it is an established rule of construction that the law does not favor a repeal by implication, but that, where there are two provisions relating to the same subject matter, they must, if possible, be construed so as to maintain the integrity of both.   And, where two statutes treat of the same subject, one being special and the other general, unless they are irreconcilably inconsistent, the latter, although latest in date, will not be held to have repealed the former, but the special act will prevail in its application to the subject matter, so far as coming within its particular provisions.

The rule is well stated in *Van Denburgh* v. *Greenbush*, 66 N. Y. 3, where it is said: "It is a rule of construction that a special statute providing for a particular case, or applicable to a particular locality, is not repealed by a statute general in its terms and application, unless the intention of the legislature to repeal or alter the special law is manifest, although the terms of the general act would, taken strictly, and, but for the special law, include the case or cases provided by it." And, as stated by Judge Cooley: "The repugnancy between two statutes should be very clear to warrant a court holding that the one later in time repeals the other, when it does not in terms purport to do so.   This rule has peculiar force in the case of laws of special and local application, which are never to be deemed repealed by general legislation, except upon the most unequivocal manifestation of intent to that effect." (Cooley's Constitutional Limitations, 6th ed., 182.)

This rule is peculiarly applicable to the case before us.   Here the legislature has by special provisions confided to the board of harbor commissioners control of the harbor front, and all improvements to be made thereon, in terms sufficiently broad to comprehend the character of improvement here provided for, and has

made special provisions for the manner in which they
shall proceed in making such improvements—provi-
sions which it is admitted by respondent should be held
to control in all general work to be done by the board.
In such a case it would require very specific language
indeed to permit us to hold that these special provisions
were intended to be affected by a general statute, the
terms of which are not essentially repugnant thereto.
The two should rather be regarded in *pari materia,* and
be taken together in ascertaining the legislative will.

Furthermore, we have a legislative construction that
the provisions of section 2524 were not repealed, or in-
tended to be, by the general act.   In 1887 (Stats. 1887,
p. 222), and again in 1889 (Stats. 1889, p. 380), the leg-
islature amended that section in other respects, but in
each instance re-enacted the provisions in question.
And, as a further legislative construction that the gen-
eral provisions of the building act were not intended to
apply to the proceedings of the harbor commissioners,
the legislature in 1895 (Stats. 1895, p. 237) amended
section 3 of said building act so as to require separate
contracts to be let for the different classes of work and
material to be required in any contemplated building or
improvement, and made the law in this particular appli-
cable, "whether the same be let by the state board of
harbor commissioners or any other of the aforesaid
commissioners, directors, trustees, or other officer or
officers."   With which last requirement the commis-
sioners in this instance have complied.

It is further objected that the provisions of section
2524 could not have been intended to apply to a work
of this character, because the board of harbor commis-
sioners is not authorized thereby to employ an archi-
tect, which it is argued is, in the essential nature of
things, rendered necessary in the construction of such a
building.   But, where power is given to perform an act,
the authority to employ all necessary means to accom-
plish the end is always one of the implications of the
law, and, notwithstanding the omission of any special

provision to that end, it was competent for the board, in carrying out the purposes of the act, to employ all necessary means to fulfill its requirements.

We think the proceedings of the board in the premises were in accordance with the law, and that petitioners are entitled to the relief asked.

Let the writ issue as prayed.

McFARLAND, J., GAROUTTE, J., HARRISON, J., and HENSHAW, J., concurred.