[S. F. No. 10947. In Bank.—June 7, 1924.]

## RAY L. RILEY, as Controller, etc., Petitioner, v. JOHN F. FORBES et al., etc., Respondents.

[1] STATE BOARD OF ACCOUNTANCY—DISPOSITION OF MONEYS—ACT OF 1901 (STATS. 1901, P. 645) NOT REPEALED OR MODIFIED BY ACT OF 1899, AS AMENDED IN 1905.—The general language of the act of March 17, 1899 (Stats. 1899, p. 110), as amended in 1905 (Stats. 1905, p. 382), that "All moneys belonging to the state received from any source whatever by any officer, commission or commissioner, board of trustees, board of managers, or board of directors, shall be accounted for at the close of each month to the state controller" and on order of the state controller be paid into the state treasury, except that in the case of designated institutions, "said money shall be credited to a fund to be known as the contingent fund of the particular institution from which such money is received, and may be expended under the same laws and provisions that govern the expenditure of money appropriated for the support of such institutions," did not have the effect of repealing or modifying the act approved March 23, 1901 (Stats. 1901, p. 645), creating the State Board of Accountancy and providing in part that all expenses of the board must be paid from its current receipts "and no portion thereof shall ever be paid from the state treasury," and requiring the board to report annually to the governor all certificates issued or renewed, together with a detailed statement of receipts and disbursements, "provided, that any balance remaining in excess of the expenses incurred may be retained by the board and used in defraying the future expenses thereof."

[2] ID.—CONTEMPORANEOUS CONSTRUCTION PLACED ON ACTS IN QUESTION—STATUTORY CONSTRUCTION.—Where from 1905 to 1923 the State Board of Accountancy received and disbursed its own funds and made its annual report to the Governor as required by the act of 1901 (Stats. 1901, p. 645), and during said period no demand was made upon said board to account to the state controller for moneys received and pay the same into the state treasury, such contemporaneous construction placed by said board and the state controller upon said act of 1901 and the act of 1899 as amended in 1905 (Stats. 1899, p. 110, and Stats. 1905, p. 382), is persuasive in support of the contention that the latter act did not repeal or modify the act of 1901.

[3] STATUTORY CONSTRUCTION—STATUTES DEALING WITH SAME SUBJECT—TIME OF ENACTMENT.—Where two statutes treat of the same subject, one being special and the other general, unless they are irreconcilably inconsistent, the latter, although later in date, will

not be held to have repealed the former, but the special act will prevail in its application to the subject matter, so far as coming within its particular provision.

[4] STATE BOARD OF ACCOUNTANCY—DISPOSITION OF PUBLIC MONEYS—ABSENCE OF INCONSISTENCY BETWEEN ACT OF 1901 AND ACT OF 1899, AS AMENDED IN 1905.—There is no irreconcilable inconsistency between the acts of March 17, 1899 (Stats. 1899, p. 110), as amended in 1905 (Stats. 1905, p. 382), and the act of 1901 (Stats. 1901, p. 645), creating the State Board of Accountancy. When read together they would mean that under the general language of the amendment of 1905 all state departments and agencies properly coming within its terms and receiving money belonging to the state shall account for and pay the same into the state treasury, but as to the State Board of Accountancy the expenses for its maintenance and support and compensation to its members for official services rendered shall be paid from fees collected from applicants for certificates to practice as certified public accountants and none of said expenses shall ever be paid from the state treasury.

[5] ID.—MONEYS COLLECTED AND DISBURSED BY BOARD—CHARACTER OF.—Since the legislature has directed that the funds to which the State Board of Accountancy shall be entitled shall be collected and disbursed in a particular way for a particular purpose, and not in accordance with the general statutes concerning the collection and disbursement of funds paid into the state treasury, it may reasonably be concluded that the legislature intended that such funds should be devoted to the support of the State Board of Accountancy until otherwise specifically ordered by the lawmaking power and should not be deemed "moneys belonging to the state," as contemplated by the general language of the amendment of 1905 (Stats. 1905, p. 382).

[6] ID.—ACT OF 1901 NOT REPEALED BY BUDGET AMENDMENT OR BILL. The adoption of the budget amendment to the constitution (Const., art. IV, sec. 34) and the provisions of the budget bill (Stats. 1923, p. 242) did not have the effect of repealing the act of 1901 (Stats. 1901, p. 645), creating the State Board of Accountancy, in so far as the latter act constituted an authorization to said board to retain and disburse its revenues in accordance with its provisions.

[7] ID.—APPROPRIATION CONTAINED IN BUDGET BILL—RIGHT OF BOARD TO RECEIVE.—Since the provisions of the budget bill did not repeal or disturb the operations of the State Board of Accountancy as a self-supporting board under the act of 1901, the items of appropriation in the budget bill purporting to set apart moneys from the general funds of the state for the support of said board are not available to said board so long as it continued to function under its own act.

PROCEEDING in Mandamus to compel State Board of Accountancy to account for and pay into state treasury moneys received by it. Writ denied.

The facts are stated in the opinion of the court.

Ralph W. Smith, Wesley E. Marten and Louis B. Diavila for Petitioner.

Allen G. Wright and Wright & Wright & Stetson for Respondents.

SHENK, J.—The petitioner, as controller of the state of California, instituted this proceeding in mandate to compel the respondents, as members of and constituting the State Board of Accountancy, to account to the petitioner for and to pay into the state treasury all moneys received by the respondents and alleged by the petitioner to be moneys belonging to the state during the months of July, August, September, October, and November, 1923.

There is no dispute as to the facts. The only question for determination is as to the legal obligation of the respondents to account for the moneys so received and to pay the same over as demanded. The petitioner bases his claim first on the provisions of section 1 of an act of March 17, 1899 (Stats. 1899, p. 110), as amended in 1905 (Stats. 1905, p. 382). The section as originally enacted required that "All moneys belonging to the state, received from any source whatever, by any commission or commissioner, the board of trustees, board of managers, board of directors, or executive officer, as the case may be, of any state hospital, asylum, prison, school, or harbor, supported by or under the control of the state, shall be accounted for at the close of each month to the state controller, and in such form as the controller may prescribe, and at the same time, on the order of the controller, be paid into the state treasury and credited to a fund to be known as the contingent fund of the particular institution from which such moneys are received, and the same shall be expended under the same laws and provisions as now govern the expenditures of moneys appropriated for the support of such institutions . . . "

As amended in 1905 (Stats. 1905, p. 382), the foregoing section was made to read as follows: "All moneys belonging to the state received from any source whatever by any officer, commission or commissioner, board of trustees, board of managers, or board of directors, shall be accounted for at the close of each month to the state controller, in such form as the controller may prescribe, and at the same time, on the order of the controller, be paid into the state treasury; *provided,* in case of any state hospital, asylum, prison, school or harbor, supported by or under control of the state, said money shall be credited to a fund to be known as the contingent fund of the particular institution from which such money is received, and may be expended under the same laws and provisions that govern the expenditure of money appropriated for the support of such institutions. . . . " This section was again amended in 1906 (Stats. 1906, p. 43), but in no way affecting the questions now under consideration. It is contended by the petitioner that the general language of the amendment of 1905 brought the respondent board within the scope of its provisions.

The respondent board was created by an act approved March 23, 1901 (Stats. 1901, p. 645). Section 1 of the act provides for the appointment of five members of the board by the Governor. In section 2 it is provided that the board shall have its offices in the city and county of San Francisco and prescribes its powers and duties in examining and certifying applicants to practice as certified public accountants. Subdivision 4 of this section provides that the board shall have power and it shall be its duty "To charge and collect from all applicants such fee, not exceeding twenty-five dollars, as may be necessary to meet the expenses of examination, issuance of certificates and conducting its office; *provided,* that all such expenses, including not exceeding five dollars per day for each member while attending the sessions of the board or conducting examinations, must be paid from the current receipts, and no portion thereof shall ever be paid from the state treasury." Subdivision 7 of the section requires the board "To report annually to the governor, on or before the first day of December, all such certificates issued or renewed, together with a detailed statement of receipts and disbursements; *provided,* that any

balance remaining in excess of the expenses incurred may be retained by the board and used in defraying the future expenses thereof.'' The respondent board was organized pursuant to the provisions of said act of 1901 and has continued to function as such thereunder. It has received and disbursed its own funds and has made its annual report to the Governor as required. No demand was made upon the respondent to account to the controller for moneys received and pay the same into the state treasury until after the enactment of the budget bill in 1923.

[1] It is apparent from the general language of the act of 1899 as amended in 1905 that the legislature did not intend to reach out and commit to the general funds of the state the revenues of the respondent board under the act of 1901. There is no provision of that amendment which would permit the payment of such revenues into any but the general fund of the state. The general fund consists of moneys received into the treasury and not specially appropriated to any other fund. (Sec. 454, Pol. Code.) The amendment of 1905 makes specific provision for crediting moneys received from any state ''hospital, asylum, prison, school or harbor'' to a special or contingent fund for the support of the particular institution mentioned, and a familiar rule of construction would exclude the creation of special funds under the act for the support of other boards or institutions paying money into the treasury under the general terms of the act. If the respondent board had complied with the requirements of the act of 1905 from the time of its enactment and paid the moneys received by it into the state treasury, we find no provision of law by virtue of which such moneys could have been withdrawn for the support of the respondent board. Furthermore, the terms of the act of 1901, in language appropriate to the subject, would have precluded such payment, for it is provided in subdivision 4 of section 2 of the act that all expenses of the board must be paid from its current receipts ''and no portion thereof shall be paid from the state treasury.'' In other words, if the respondent board had acceded to the requirements of the general language of the amendment of 1905 from and after its enactment and had paid its revenues into the state treasury, and had sought a controller's warrant on the treasury of the state for its expenses, the con-

troller would have been confronted with the specific in-
hibition of the statute against any payment for such pur-
poses from the state treasury. We cannot conclude that the
general language of the amendment of 1905 had the effect
of repealing or modifying the act of 1901, as contended by
petitioner.

[2]   This construction of the statutes in question seems to
have been followed by both the respondent board and by the
state controller during all the time from 1905 to 1923, a period
of over eighteen years. Such contemporaneous construction
is persuasive in support of the contention of the respondent.
In *United States* v. *Philbrick,* 120 U. S. 52 [30 L. Ed. 559,
7 Sup. Ct. Rep. 413, see, also, Rose's U. S. Notes], it was
said: "A contemporaneous construction by the officers upon
whom was imposed the duty of executing those statutes is
entitled to great weight; and since it is not clear that that
construction was erroneous, it ought not now to be over-
turned." To the same effect, see *United States* v. *Johnston,*
124 U. S. 236 [30 L. Ed. 559, 7 Sup. Ct. Rep. 413]`, *Rail
road Commrs.* v. *Market Street Ry. Co.,* 132 Cal. 677 [64
Pac. 1065], and *Comstock* v. *Davis,* 44 Cal. App. 275 [186
Pac. 380].

The evident purpose of the act creating the respondent
board was to make it self-supporting. [3] It treats of but
one subject and as against the general language of the
amendment of 1905 the respondents have invoked, and, we
think properly so, the rule of construction that "where two
statutes treat of the same subject, one being special and
the other general, unless they are irreconcilably inconsistent,
the latter, although later in date, will not be held to have
repealed the former, but the special act will prevail in its
application to the subject matter, so far as coming within
its particular provision." (*Bateman* v. *Colgan,* 111 Cal.
580 [44 Pac. 238]; *Estate of Brewer,* 156 Cal. 89 [103 Pac.
486]; *Matter of Petition of Johnson,* 167 Cal. 142 [138 Pac.
740].) [4] We find no irreconcilable inconsistency between
the two acts. When read together they would mean that
under the general language of the amendment of 1905 all
state departments and agencies properly coming within its
terms and receiving money belonging to the state shall
account for and pay the same into the state treasury, but
as to the state board of accountancy the expenses for its

maintenance and support and compensation to its members for official services rendered shall be paid from fees collected from applicants for certificates to practice as certified public accountants and none of said expenses shall ever be paid from the state treasury. Judge Cooley has stated the rule thus: "The repugnancy between two statutes should be very clear to warrant a court holding that the one later in time repeals the other, when it does not in terms purport to do so. This rule has peculiar force in the case of laws of special and local application, which are never to be deemed repealed by general legislation, except upon the most unequivocal manifestation of intent to that effect." (Cooley's Constitutional Limitations, 6th ed., p. 182.)

It is also insisted by the respondent that the amendment of 1905 is not applicable to the board for the reason that the moneys collected and disbursed by it under the act of 1901 are not "moneys belonging to the state," in the sense in which this phrase is there used. The petitioner resists this contention, but cites no authority in support of his position. On the other hand, the respondents have called attention to several cases in other jurisdictions which seem to be directly in point. In *Ex parte Lucas*, 160 Mo. 218 [61 S. W. 215], the supreme court of Missouri had under consideration an act of the legislature creating a board of examiners for barbers, providing for the issuance of licenses to barbers upon the payment to the board of certain specified fees and providing that the members of the board should receive a compensation of three dollars per day and railroad and traveling expenses to be paid out of any moneys in the hands of the treasurer of the board. The petitioner in that case was arrested for engaging in the occupation of a barber without a license and on *habeas corpus* proceedings contended that the act in question was in violation of the provisions of section 43 of article IV of the constitution of Missouri, which provided that all moneys received by the state from any source whatever should go into the state treasury and not be withdrawn therefrom except pursuant to a regular appropriation under the law. The contention was held not well founded for the reason, as stated by the court, "that section 43, article IV, applies only to moneys provided for and received by the state. The money authorized to be collected under this act is not state revenue,

but is simply a provision to make the board of examiners self-supporting.''

In *State* v. *Clausen*, 51 Wash. 548 [99 Pac. 743], the supreme court of the state of Washington had under consideration an act passed by the legislature of that state in 1891 providing for the location and maintenance of the State College of Washington. The institution derived its revenues in part from the general and state governments, in part from the students for rent and in part from the sale of agricultural products. During the year 1908 the treasurer of the board of regents lawfully received from sources other than the general and state governments something over seven thousand dollars, which he deposited in the state treasury under the belief that he was required to do so. The respondent state auditor refused to honor the demand on behalf of the regents of the college to withdraw the sum so deposited, basing his refusal on an act of 1907, which provided in part as follows: ''That it shall be the duty of each state officer or other person (other than county treasurers) who is authorized by law to col- lect or receive moneys belonging to the state or to any department or institution thereof, to transmit to the treasury of the state each day, all moneys collected by him on the preceding day, together with a statement of the sources from which each item of said moneys was derived and to transmit to the state auditor a duplicate of such statement.'' The question involved was whether such funds were ''the finances of the state'' or ''moneys belonging to the state,'' as contemplated by the act of 1907. It was held that, while the ''finances of the state in its broad sense, would probably include the money deposited by the college with the state treasury,'' still it was ''apparent that the legislature did not intend by this general language to reach out and include the fund in controversy.''

In *People* v. *Murray*, 149 N. Y. 367 [32 L. R. A. 344, 44 N. E. 146], the court of appeals of New York decided that an act of the legislature of that state providing that two-thirds of the revenues derived from licenses authorized to be issued under the act should belong to the city or town in which the same was collected, to be used in defraying the expenses of the local government, was not an appropriation of ''public moneys'' and did not violate the pro-

visions of the state constitution forbidding the appropriation of such moneys for local purposes without a two-thirds vote of the legislature.

It may well be assumed that the moneys collected by the respondent board are "public moneys" in the broad sense of the term. They are funds over which the legislature has control in the first instance; that is to say, they may not be charged or collected without legislative authority. [5] But when the legislature has acted with reference thereto and has directed that the same shall be collected and disbursed in a particular way for a particular purpose under the circumstances here shown and not in accordance with the general statutes concerning the collection and disbursement of funds paid into the state treasury, it may reasonably be concluded that the legislature intended that such funds should be devoted to the support of the respondent board until otherwise specifically ordered by the law-making power and should not be deemed "moneys belonging to the state," as contemplated by the general language of the amendment of 1905.

It is next contended by petitioner that, even if the act of 1905 did not disturb the operation of the respondent board under the act of 1901, the adoption of the budget amendment to the constitution (Const., art. IV, sec. 34) and the provisions of the budget bill (Stats. 1923, p. 242) had the effect of repealing the act of 1901 in so far as the latter act constituted an authorization to the respondent board to retain and disburse such revenues in accordance with its provisions.

[6] The budget amendment to the constitution requires the Governor to submit to the legislature a budget containing a complete plan and itemized statement of all proposed expenditures. of the state provided by existing law or recommended by him "of all its institutions, departments, boards, bureaus, commissions, officers, employees and other agencies, and of all estimated revenues" and to submit with the budget an appropriation bill covering the proposed expenditures. The budget bill enacted pursuant to the constitutional amendment contains an appropriation relating to the state board of accountancy in the following language: "For support, state board of accountancy, five thousand and thirty dollars." (Stats. 1923, p. 247.) The budget bill contains the following language relative to the effect of ap-

propriations therein contained on existing statutory provisions for items of salary or support included in the act: "In all cases in which statutory provisions or appropriations have been made for items of salary or of support included in this act the amounts herein appropriated shall govern, and such other appropriations shall not be received in addition thereto," and it is contended by petitioner that inasmuch as the legislature has made the appropriation hereinbefore referred to, all authority for expenditures for compensation to the members of the board and expenses provided for by the act of 1901 has been abrogated. This contention is not well taken unless a repeal of said act either expressly or by necessary implication has been accomplished by the budget bill. It is not contended that an express repeal has taken place, but it is insisted that there is such a conflict between the budget bill and the act of 1901 as to constitute a repeal of the latter by implication. The effect of the budget amendment and the provisions of the budget bill on certain existing statutes providing for the disposition of moneys collected and disbursed under the authority of such statutes has been construed by this court in numerous so-called "budget cases." (*Railroad Commission* v. *Riley*, 192 Cal. 54 [218 Pac. 415]; *Keiser* v. *State Board of Control*, 192 Cal. 129 [218 Pac. 1016]; *Jamme* v. *Riley*, 192 Cal. 125 [218 Pac. 578]; *Western Shore Lumber Co.* v. *Riley*, 192 Cal. 144 [218 Pac. 761]; *Board of Osteopathic Examiners* v. *Riley*, 192 Cal. 158 [218 Pac. 1018].)

It was held in *Railroad Com.* v. *Riley, supra,* that the budget constitutional amendment did not repeal by implication any prior appropriation bill validly enacted by a previous legislature and that the budget bill did not operate as an implied repeal of all appropriations provided for by statutes preceding the budget bill nor do away with all special funds and convert such funds into a part of the general funds of the state. It was said in that case: "In the absence of some specific provision in the budget bill requiring that the special fund be transferred to the general fund, it would seem that the legislative intention is clearly shown to be that such special funds shall remain intact as special funds." This construction of the constitutional amendment and of the budget bill was followed and approved in the other budget cases above cited.

The situation here presented is still stronger for respondent. Here we are not dealing with any special fund in the state treasury, but with a fund of self-supporting agency of the state concerning which the legislature in effect has stated in the act of 1901 shall not be paid into the state treasury.

It is urged by the petitioner that if the respondent board is to continue, notwithstanding the budget bill, to collect and disburse the funds as provided for in the act of 1901, the said board "would not be limited for its operating expenses, charges and salaries to the fees and commissions alone, but would also receive the fund set apart in the budget bill for materials, supplies, services and expenses."
[7] But since the provisions of the budget bill did not repeal or disturb the operations of the respondent board as a self-supporting board under the act of 1901, we conclude that the items of appropriation in the budget bill purporting to set apart moneys from the general funds of the state for the support of the respondent board are not available to said board so long as it continued to function under its own act. It should be said, however, that in this proceeding we are not called upon to consider or determine the question of whether or not the amounts specified in the budget bill and relating to the respondent board constitute a limitation upon the expenditures which said board may make during the fiscal years mentioned in said budget bill.

The peremtory writ is denied.

Myers, C. J., Lawlor, J., Lennon, J., Richards, J., Seawell, J., and Langdon, J., *pro tem.*, concurred.