W. H. CROOKS, Respondent, v. THE PEOPLES FI-
NANCE & THRIFT COMPANY OF POMONA VAL-
LEY (a Corporation), Appellant.

(1 Cal. Supp. 86.)

Fickeisen & Richardson for Appellant.

Allard & Stead for Respondent.

SHAW, Acting P. J.—This action was brought by plaintiff under the Usury Law to recover $154.74, being treble the amount of usurious interest alleged to have been paid by plaintiff to defendant. The court gave judgment for plaintiff for the sum of $94.05, from which defendant appeals.
A question has been raised as to the jurisdiction of this department over this appeal. We have concluded that we have such jurisdiction, but do not deem it necessary to discuss the reasons for that conclusion at this time.

Coming to the merits of the appeal, it appears from the record without dispute that the plaintiff borrowed a sum of money from defendant and agreed to pay and did pay to the defendant for the loan, interest at the rate of two per cent per month, amounting to $31.35, which interest was paid less than one year before this suit was brought; that the defendant was at the time doing business as a personal property broker as that term is defined in the act of 1909 (Stats. 1909, p. 969) regulating personal property brokers; and that the transaction satisfied the requirements of that act. Upon these facts, but one question of law is presented; that is, whether the Usury Law, adopted as an initiative measure in 1918 (Stats. 1919, p. lxxxvii), repealed the act of 1909 regulating personal property brokers, as to the rate of interest that may be charged by such brokers on loans. The act of 1909 was amended in 1911 (Stats. 1911, p. 978) and has since stood unchanged. The Usury Law is the later in point of time, but it contains no provision expressly repealing the other act, and hence the question is whether it accomplished such repeal by implication.

The act regulating personal property brokers has been upheld (*Eaker* v. *Bryant,* 24 Cal. App. 87 [140 Pac. 310]; *Matter of Stephan,* 170 Cal. 48 [Ann. Cas. 1916E, 617, 148 Pac. 196]), but these cases were decided before the Usury Law was adopted and have no bearing upon the question before us.

Appellant contends that the act of 1909 was not affected by the Usury Law, relying on the rule which is stated in *Riley* v. *Forbes,* 193 Cal. 740, 745 [227 Pac. 768], as follows: "Where two statutes treat of the same subject, one being special and the other general, unless they are irreconcilably inconsistent, the latter, although later in date, will not be held to have repealed the former, but the special act will prevail in its application to the subject matter, so far as coming within its particular provision."

It is perhaps impossible to reconcile the many decisions on this point, but the decision of each case must depend largely on the provisions of the particular statutes involved. In *Riley* v. *Forbes, supra,* it was held that a statute authorizing the state board of accountancy to collect and keep certain fees and to use them in payment of its expenses was not repealed by a later statute requiring "all moneys belonging to the state" collected by any board to be paid into the state treasury, the court saying that "We find no irreconcilable inconsistency between the two acts" and that the fees collected by the board were not money belonging to the state within the meaning of the later act. The language first quoted from *Riley* v. *Forbes* was there quoted from *Bateman* v. *Colgan,* 111 Cal. 580, 586 [44 Pac. 238]. In *Bateman* v. *Colgan* the court said there was no inconsistency between the acts under consideration, and further said, quoting with approval from a New York decision: "It is a rule of construction that a special statute providing for a particular case, or applicable to a particular locality, is not repealed by a statute general in its terms and application, unless the intention of the legislature to repeal or alter the special law is manifest, although the terms of the general act would, taken strictly, and, but for the special law, include the case or cases provided by it."

In *Home for Inebriates* v. *Reis,* 95 Cal. 142, 148 [30 Pac. 205], the court held that a statute directing fines imposed

by the San Francisco police courts on charges of drunken-ness to be paid to the plaintiff was not repealed by a later statute providing that all fines imposed by said court should be paid into the city treasury. The court here called atten-tion to the fact that the later statute was but a re-enact-ment of an older one which antedated the special statute, and quoted with approval from Endlich on Interpretation of Statutes the following: ''A general act is to be construed as not repealing a particular one, that is, one directed towards a special object or a special class of objects. . . . Having already given its attention to the particular subject and provided for it, the legislature is reasonably presumed not to intend to alter that special provision by a subsequent general enactment, unless that intention is manifested in ex-plicit language, or there be something which shows that the attention of the legislature has been turned to the special act, and that the general one was intended to embrace the special cases within the previous one.''

On the other hand, there are many California cases where a later general statute has been held to repeal a prior special statute. Among these cases are: *People* v. *Grippen,* 20 Cal. 677; *People* v. *Burt,* 43 Cal. 560; *People* v. *Sargent,* 44 Cal. 430; *Pennie* v. *Reis,* 80 Cal. 266 [22 Pac. 176]; *People* v. *Henshaw,* 76 Cal. 436, 440 [18 Pac. 413, 415]; *Kennedy* v. *Board of Education,* 82 Cal. 483, 492 [22 Pac. 929]; *Ex parte Ah You,* 82 Cal. 339 [22 Pac. 929]; *Miller* v. *Curry,* 113 Cal. 644, 647 [45 Pac. 877].

In *People* v. *Henshaw, supra,* the court held that a special act providing a police court for the city of Oakland was repealed by a later act providing for police courts in all cities of a certain size, which included Oakland. The court said: ''Where, as in the present case, the latter statute is repugnant to the former, and both cannot stand together, the latter will repeal the former.''

In *Pennie* v. *Reis, supra,* the court said that a repeal by implication ''takes place whenever by subsequent legisla-tion it becomes apparent that the legislature did not intend the former act to remain in force.''

In *Miller* v. *Curry, supra,* the court said that the rule referred to by appellant ''has its limits, and means no more than that in arriving at the intent of the legislature, which is always to govern, and endeavoring to deduce that intent

from the acts themselves, unless there be plain and explicit terms of repeal in the later act, or unless the provisions of the two acts be so inconsistent as that both may not stand, it will be assumed that the legislature, in making general provision for all cases, did not mean to destroy the effect of a rule laid down with explicit care and directness, and applicable to a particular class of cases. But this, after all, is but a means of arriving at the legislative intent when other and better means are not available. . . . The rules that we have been considering apply only in a case where a repugnancy between the two acts is not manifest. If such a repugnancy exists, then it is well settled that the earlier act must fall. (Endlich on Interpretation of Statutes, sec. 206.) Only so far as the two acts are not, in their terms, incompatible with each other is the earlier act allowed to stand.''

In the Washer case, 200 Cal. 598 [254 Pac. 951], the Supreme Court applied the rule mentioned by appellant to the Usury Act so far as to hold that it does not affect or repeal statutes respecting the control of corporate securities, public or private, but said in that connection: ''We are not here deciding what may be the effect of the act upon existing statutes regulating the business of pawnbrokers and other personal property brokers.'' (P. 607.)

Comparing now the two statutes here involved, we find that the act regulating personal property brokers, as amended in 1911, defines the term ''personal property broker'' to include ''every person or corporation engaged in the business of loaning or advancing money or other thing'' on the security of any chattel mortgage or other contract hypothecating personal property, the use or possession of which is not to be in the lender, or on the security of a lien upon, assignment of or power of attorney relating to ''wages, salary, earnings, income or commissions''. (Sec. 1.) It further provides that ''such personal property broker may charge, receive and collect a benefit or percentage upon money or other thing advanced, or for the use and forbearance thereof, of two per centum per month where such loan or advance is made upon security properly falling within the scope of business as set forth in section 1 hereof'' (sec. 2); that such brokers shall not make

or receive any further charge for any service or on any pretext in connection with the loan if such charges, plus the interest, would amount to more than two per cent per month, except certain fees necessary to give legal effect to a mortgage (sec. 3); that no contract made by a personal property broker in his business shall be valid "if there is therein or thereon directly or indirectly charged, accepted, or contracted to be received" a greater benefit, discount or interest than at the rate of two per cent per month, and if interest at any greater rate is "directly or indirectly advanced or paid" upon such a contract, the excess above two per cent per month may be recovered by the person who paid it (sec. 4).

The Usury Law provides: "No person, company, association or corporation shall directly or indirectly take or receive in money, goods, or things in action, or in any other manner whatsoever, any greater sum or any greater value for the loan or forbearance of money, goods, or things in action than at the rate of twelve dollars upon one hundred dollars for one year; . . . Any agreement or contract of any nature in conflict with the provisions of this section shall be null and void as to any agreement or stipulation therein contained to pay interest" (sec. 2); that every person who pays interest at a rate exceeding twelve per cent per annum may recover treble the interest paid, and that a violation of section 2 of the act is a misdemeanor (sec. 3). Also in section 3 there is a provision regarding secured loans to which we shall refer later.

Reducing these statutes to their lowest terms, the act of 1909 provides that personal property brokers may take interest on a loan at the rate of twenty-four per cent per annum and the Usury Law provides that no lender may take interest at a rate greater than twelve per cent per annum. It appears to us that there is a plain and irreconcilable repugnancy between these two provisions; and although the Supreme Court in the Washer case, *supra,* declined to decide the question now before us, we think the conclusion we have just stated is foreshadowed by that part of the opinion in that case wherein the court said: "The inevitable conclusion from these views is that sections 1 and 2 of the act known as the Usury Law are, in all

respects, valid and govern both *secured* and unsecured obligations'' (p. 608), and by the following statement made by the court while holding unconstitutional the provision of section 3, which we will quote in our next paragraph: ''It would appear, therefore, that the draftsman of the Usury Law statute of California undertook to broaden the provisions respecting personal property loans so as to include secured obligations of all kinds on real and personal property, except corporate bonds, municipal and other public bonds, without realizing that *the preceding sections of the act fully covered secured loans.''*   (Italics added by us.)

■ Applying the rule concerning the implied repeal of a special statute by a general statute, as declared in the authorities previously cited, we find a clear indication that the attention of the lawmaking power when enacting the Usury Law was turned to the act regulating personal property brokers and that the repeal of the last-mentioned act was intended, in the following part of section 3 of the Usury Law, which describes in detail the business of a personal property broker and denounces as a misdemeanor acts which he is permitted to do by the act of 1909: ''Any person, company, association or corporation, who shall ask, demand, receive, take, accept or charge more than twelve per centum per annum upon the sum of money actually loaned for the forbearance, use or loan thereof, when the repayment of the money loaned shall be secured by a mortgage, trust deed, bill of sale, assignment, pledge, receipt or other evidence of debt, except corporate bonds, and municipal and other public bonds, upon property, real or personal, or by assignment of wages . . . shall be guilty of a misdemeanor.'' ■ This provision was, it is true, held unconstitutional in the Washer case, *supra*, because it excepted certain classes of securities from its ban, but this holding was coupled with the declarations already quoted that other parts of the act had the same effect; and even an unconstitutional part of a statute may be examined for the purpose of ascertaining the scope and effect of the valid parts thereof. (*Ex parte Fedderwitz*, 6 Cal. Unrep. 562, 572 [62 Pac. 935, 940]; 36 Cyc. 1131, 1132.)

■ If there was any uncertainty as to the construction of the Usury Law on this point, which we do not concede,

it would be proper to resort, in aid of its interpretation, to the arguments submitted to the voters at the time it was voted upon and adopted as an initiative measure (*Story v. Richardson,* 186 Cal. 162, 165 [18 A. L. R. 750, 198 Pac. 1057]; *Yosemite Lumber Co. v. Industrial Acc. Com.,* 187 Cal. 774, 781 [20 A. L. R. 994, 204 Pac. 226]). On examining the pamphlet containing these arguments we find there officially listed, among the provisions which will be repealed by the proposed Usury Law, that part of the act of 1909 which permits personal property brokers to charge interest at the rate of two per centum per month, and the respective arguments, while not mentioning the act of 1909, proceed on the assumption that it will be affected by the proposed Usury Law. In view of these facts, it is clear that the voters who read these pamphlets understood that the proposed law would limit the rate of interest to be charged by personal property brokers.

Our conclusion is that the Usury Law has repealed *pro tanto* the act regulating personal property brokers, and such brokers may not charge or receive interest at a rate exceeding twelve per cent per annum. The judgment of the trial court is therefore right and it is affirmed, with costs of appeal to the respondent.

Bishop, J., and Tappaan, J., *pro tem.,* concurred.