[S. F. No. 14405.   In Bank.—May 16, 1932.]

BENEFICIAL LOAN SOCIETY, LTD. (a Corporation), Petitioner, v. RAYMOND L. HAIGHT, as Commissioner of Corporations, etc., Respondent.

Sullivan, Roche, Johnson & Barry for Petitioner.

L. J. Styskel, Walter S. Hilborn and Charles W. Haswell, *Amici Curiae* on Behalf of Petitioner.

U. S. Webb, Attorney-General, and William F. Cleary, Deputy Attorney-General, for Respondent.

Charles W. Rollinson, Hugh K. McKevitt, George W. Lupton, Jr., Peck, Bunker & Peck, Chapman & Chapman, Ward Chapman, Lee Roy Bringham, Arnold C. Lackenbach, Julian D. Cohn, Willard L. Ellis, Goldman & Altman, Louis E. Goodman and Louis H. Brownstone, *Amici Curiae* on Behalf of Respondent.

PRESTON, J.—The underlying purpose of this proceeding in mandate is to test the validity of certain provisions of the Personal Property Brokers Act, as amended by the legislature in 1931 (Stats. 1931, p. 558), particularly the provisions of sections 2 and 3 thereof, which are alleged to be in conflict with the provisions of the Usury Law (Stats. 1919, p. lxxxiii).

Petitioner is a personal property broker, engaged in the business of loaning or advancing money in sums of $300 and less and taking as security for such loan or advance a chattel mortgage, bill of sale, or other obligation involving the forfeiture of rights in or to personal property, the use or possession of which is retained by another than the lender,

and also engaged in the business of loaning or advancing money or other thing, taking in whole or in part as security therefor a lien on, assignment of, or power of attorney relative to wages, salary, earnings, income or commissions.

Pursuant to sections 7, 8, 9 and 10 of said act (Stats. 1931, pp. 559, 560) petitioner duly applied to the commissioner of corporations of this state for a license to do business, paying the required fee, posting a bond and otherwise complying fully and in every respect with all the provisions of said act relating to its said application. The commissioner, however, refused to issue the license because of doubt and uncertainty respecting various questions as to the extent and validity of the act. Petitioner being thus deprived of the right to pursue its regular occupation and business after expending large sums of money in connection therewith, and fearing irreparable loss through delay, filed its petition for mandate herein, praying that respondent be directed to issue a license to it in accordance with the provisions of said act and that the rights and duties of the parties hereto be declared and that the construction and validity of the act also be determined.

Petitioner alleged its intention to charge, receive or collect the full benefit or percentage allowed by said sections 2 and 3 of the act, which read: ''Such personal property broker may charge, receive and collect a benefit or percentage upon money or other thing advanced, or for the use and forbearance thereof, of three and one-half per centum per month on remaining unpaid balances on sums loaned up to and including the sum of three hundred dollars, where such loan or advance is made upon security properly falling within the scope of business as set forth in section 1 hereof.'' (Sec. 2.) ''No further or other charges either for recording, insuring or examining the security or property, or for the drawing, executing or filing of papers, or for any services or upon any pretext whatsoever beyond the aforesaid charge for interest or discount shall be asked, charged, or in any way received, where the same would thereby make a greater charge for the money or thing advanced than the aforesaid rate, and where made all such charges shall be considered and be of the same effect as so much added interest.' (Sec. 3.)

The above sections, respondent claims, purport to authorize a charge of three and one-half per cent per month, or forty-two per cent per annum, on certain loans of $300 and less, and hence they are obviously in conflict with the provisions of the Usury Law, which latter statute makes it unlawful for any "person, company, association or corporation" to " . . . directly or indirectly take or receive in money, goods or things in action, or in any other manner whatsoever, any greater sum or any greater value for the loan or forbearance of money, goods or things in action than at the rate of twelve dollars upon one hundred dollars for one year . . . "

Further, respondent argues that if sections 2 and 3 of the Personal Property Brokers Act were valid, then the provisions of the Usury Law would be modified, and to that extent superseded and repealed by it. But the Usury Law is an initiative measure and the Constitution (art. IV, sec. 1) provides that " . . . no act . . . adopted by the people at the polls under the initiative provisions of this section shall be amended or repealed except by a vote of the electors . . . "; hence, the Usury Law may not be held to be modified by said sections 2 and 3 and they are therefore invalid.

Lying at the base of this inquiry is the effect of the Usury Law upon sections 2 and 3 of the Brokers Act of 1909 (Stats. 1909, p. 969), as amended in 1911 (Stats. 1911. p. 978). This is so because sections 2 and 3 of the Act of 1931 above quoted are substantially re-enactments of sections 2 and 3 of the Act of 1909 and differ only in the rate that may be charged on the loans and the number of parties that will be affected thereby. This question, in reality, is settled by our holding in *In re Washer*, 200 Cal. 598 [254 Pac. 951]. We there plainly held that the Usury Law established the maximum rate of interest for all loans, whether secured or unsecured, and this, too, regardless of the amount or the nature of the security. It is impossible for the Washer case to stand and at the same time to permit an arbitrary charge by a certain group of personal property brokers of a greater amount. It is true that we held that the Corporate Securities Act (Deering's Gen. Laws, 1923, part 1, p. 1407, Act 3814), together with its amendatory and supplementary provisions, the Public Utilities Act (Deering's Gen. Laws, 1923, part 2, Act 6386, p. 2683) and the Bank Act (Deer-

ing's Gen. Laws, 1923, part 1, Act 652, p. 153) were not affected by the Usury Law, but this is justified upon the ground that the transactions governed by those acts are in reality not loans at all within the meaning of the said Usury Law. We indorse the discussion of this question found in the case of *Crooks* v. *People's Finance etc. Co.,* 111 Cal. App. (Supp.) 769 [292 Pac. 1065], recently decided by the appellate division of the Superior Court of Los Angeles County, opinion by Judge Hartley Shaw, from which we quote the following:

"Appellant contends that the act of 1909 was not affected by the Usury Law, relying on the rule which is stated in *Riley* v. *Forbes,* 193 Cal. 740, 745, as follows: 'Where two statutes treat of the same subject, one being special and the other general, unless they are irreconcilably inconsistent, the latter, although later in date, will not be held to have repealed the former, but the special act will prevail in its application to the subject-matter, so far as coming within its particular provision.'

"It is perhaps impossible to reconcile the many decisions on this point, but the decision of each case must depend largely on the provisions of the particular statutes involved. In *Riley* v. *Forbes, supra,* it was held that a statute authorizing the state board of accountancy to collect and keep certain fees and to use them in payment of its expenses was not repealed by a later statute requiring 'all moneys belonging to the state' collected by any board to be paid into the state treasury, the court saying that 'We find no irreconcilable inconsistency between the two acts' and that the fees collected by the board were not money belonging to the state within the meaning of the later act. The language first quoted from *Riley* v. *Forbes* was there quoted from *Bateman* v. *Colgan,* 111 Cal. 580, 586 [44 Pac. 238, 240]. In *Bateman* v. *Colgan* the court said there was no inconsistency between the acts under consideration, and further said, quoting with approval from a New York decision (*Van Denburgh* v. *Greenbush,* 66 N. Y. 3) : 'It is a rule of construction that a special statute providing for a particular case, or applicable to a particular locality, is not repealed by a statute general in its terms and application, unless the intention of the legislature to repeal or alter the special law is manifest, although the terms of the general act would, taken strictly,

and but for the special law, include the case or cases provided by it.'

"In *Home for Inebriates* v. *Reis,* 95 Cal. 142, 148 [30 Pac. 205, 207], the court held that a statute directing fines imposed by the San Francisco police court on charges of drunkenness, to be paid to the plaintiff, was not repealed by a later statute providing that all fines imposed by said court should be paid into the city treasury. The court here called attention to the fact that the later statute was but a reenactment of an older one which antedated the special statute, and quoted with approval from ·Endlich on Interpretation of Statutes the following: 'A general act is to be construed as not repealing a particular one; that is, one directed towards a special object or a special class of objects. . . . Having already given its attention to the particular· subject and provided for it, the legislature is reasonably presumed not to intend to alter that special provision by a subsequent general enactment, unless that intention is manifested in explicit language, or there be something which shows that the attention of the legislature has been turned to the special act, and that the general one was intended to embrace the special cases within the previous one.'

"On the other hand, there are many California cases where a later general statute has been held to repeal a prior special statute. Among these cases are: *People* v. *Grippen,* 20 Cal. 677; *People* v. *Burt,* 43 Cal. 560; *People* v. *Sargent,* 44 Cal. 430; *Pennie* v. *Reis,* 80 Cal. 266 [22 Pac. 176, 177]; *People* v. *Henshaw,* 76 Cal. 436, 440 [18 Pac. 413, 415]; *Kennedy* v. *Board of Education,* 82 Cal. 483, 492 [22 Pac. 1042]; *Ex parte Ah You,* 82 Cal. 339 [22 Pac. 929]; *Miller* v. *Curry,* 113 Cal. 644, 647 [45 Pac. 877, 878].

"In *People* v. *Henshaw, supra,* the court held that a special act providing a police court for the city of Oakland was repealed by a later act providing for police courts in all cities of a certain size, which included Oakland. The court said: 'Where, as in the present case, the latter statute is repugnant to the former, and both cannot stand together, the latter will repeal the former.'

"In *Pennie* v. *Reis, supra,* the court said that a repeal by implication 'takes place whenever by subsequent legislation

it becomes apparent that the legislature did not intend the former act to remain in force'.

"In *Miller* v. *Curry, supra,* the court said that the rule referred to by appellant 'has its limits, and means no more than that in arriving at the intent of the legislature, which is always to govern, and in endeavoring to deduce that intent from the acts themselves, unless there be plain and explicit terms of repeal in the later act, or unless the provisions of the two acts be so inconsistent as that both may not stand, it will be assumed that the legislature, in making general provision for all cases, did not mean to destroy the effect of a rule laid down with explicit care and directness, and applicable to a particular class of cases. But this, after all, is but a means of arriving at the legislative intent when other and better means are not available. . . . The rules that we have been considering apply only in a case where a repugnancy between the two acts is not manifest. If such a repugnancy exists, then it is well settled that the earlier act must fall. (Endlich on Interpretation of Statutes, sec. 206.) Only so far as the two acts are not, in their terms, incompatible with each other is the earlier act allowed to stand.

"In the Washer case, 200 Cal. 598 [254 Pac. 951], the Supreme Court applied the rule mentioned by appellant to the Usury Act so far as to hold that it does not affect or repeal statutes respecting the control of corporate securities, public or private, but said in that connection: 'We are not here deciding what may be the effect of the act upon existing statutes regulating the business of pawnbrokers and other personal property brokers.' (P. 607.)

"Comparing now the two statutes here involved, we find that the act regulating personal property brokers, as amended in 1911, defines the term 'personal property broker' to include 'every person or corporation engaged in the business of loaning or advancing money or other thing' on the security of any chattel mortgage or other contract hypothecating personal property, the use or possession of which is not to be in the lender, or on the security of a lien upon, assignment of or power of attorney relating to 'wages, salary earnings, income or commissions'. (Sec. 1.) It further provides that 'such personal property broker may charge, receive and collect a benefit or percentage upon money or other thing advanced, or for the use and forbearance thereof, of two per

centum per month where such loan or advance is made upon security properly falling within the scope of business as set forth in section 1 hereof' (sec. 2); that such brokers shall not make or receive any further charges for any services or on any pretext in connection with the loan if such charges, plus the interest, would amount to more than two per cent per month, except certain fees necessary to give legal effect to a mortgage (sec. 3); that no contract made by a personal property broker in his business shall be valid 'if there is therein or thereon directly or indirectly charged, accepted or contracted to be received' a greater benefit, discount or interest than at the rate of two per cent per month, and if interest at any greater rate is 'directly or indirectly advanced or paid' upon such a contract, the excess above two per cent per month may be recovered by the person who paid it (sec. 4).

"The Usury Law provides: 'No person, company, association or corporation shall directly or indirectly take or receive in money, goods or things in action, or in any other manner whatsoever, any greater sum or any greater value for the loan or forbearance of money, goods, or things in action than at the rate of twelve dollars upon one hundred dollars for one year; . . . Any agreement or contract of any nature in conflict with the provisions of this section shall be null and void as to any agreement or stipulation therein contained to pay interest' (sec. 2); that every person who pays interest at a rate exceeding twelve per cent per annum may recover treble the interest paid, and that a violation of section 2 of the act is a misdemeanor (sec. 3). Also in section 3 there is a provision regarding secured loans to which we shall refer later.

"Reducing these statutes to their lowest terms, the Act of 1909 provides that personal property brokers may take interest on a loan at the rate of twenty-four per cent per annum and the Usury Law provides that no lender may take interest at a rate greater than twelve per cent per annum. It appears to us that there is a plain and irreconcilable repugnancy between these two provisions; and although the Supreme Court in the Washer case, *supra*, declined to decide the question now before us, we think the conclusion we have just stated is foreshadowed by that part of the opinion in

that case wherein the court said: 'The inevitable conclusion from these views is that sections 1 and 2 of the act known as the Usury Law are, in all respects, valid and govern both *secured* and unsecured obligations' (p. 608), and by the following statement made by the court while holding unconstitutional the provision of section 3, which we will quote in our next paragraph: 'It would appear, therefore, that the draftsman of the Usury Law statute of California undertook to broaden the provisions respecting personal property loans so as to include secured obligations of all kinds on real and personal property, except corporate bonds, municipal and other public bonds, without realizing that *the preceding sections of the act fully covered secured loans.*' (Italics added by us.)

"Applying the rule concerning the implied repeal of a special statute by a general statute, as declared in the authorities previously cited, we find a clear indication that the attention of the law-making power when enacting the Usury Law was turned to the act regulating personal property brokers and that the repeal of the last-mentioned act was intended, in the following part of section 3 of the Usury Law, which describes in detail the business of a personal property broker and denounces as a misdemeanor acts which he is permitted to do by the Act of 1909: 'Any person, company, association or corporation, who shall ask, demand, receive, take, accept or charge more than twelve per centum per annum upon the sum of money actually loaned for the forbearance, use or loan thereof, when the repayment of the money loaned shall be secured by a mortgage, trust deed, bill of sale, assignment, pledge, receipt or other evidence of debt, except corporate bonds, and municipal and other public bonds, upon property, real or personal, or by assignment of wages . . . shall be guilty of a misdemeanor.' This provision was, it is true, held unconstitutional in the Washer case, *supra,* because it excepted certain classes of securities from its ban, but this holding was coupled with the declarations already quoted that other parts of the act had the same effect; and even an unconstitutional part of a statute may be examined for the purpose of ascertaining the scope and effect of the valid parts thereof. (*Ex parte Fedderwitz*, 6 Cal. Unrep. 562, 572 [62 Pac. 935, 940]; 36 Cyc. 1131, 1132.)

"If there were any uncertainty as to the construction of the Usury Law on this point, which we do not concede, it would be proper to resort, in aid of its interpretation, to the arguments submitted to the voters at the time it was voted upon and adopted as an initiative measure. (*Story* v. *Richardson*, 186 Cal. 162, 165 [18 A. L. R. 750, 198 Pac. 1057]; *Yosemite L. Co.* v. *Industrial Acc. Com.*, 187 Cal. 774, 781 [20 A. L. R. 994, 204 Pac. 226].) On examining the pamphlet containing these arguments we find there officially listed, among the provisions which will be repealed by the proposed Usury Law, that part of the act of 1909 which permits personal property brokers to charge interest at the rate of two per centum per month; and the respective arguments, while not mentioning the Act of 1909, proceed on the assumption that it will be affected by the proposed Usury Law. In view of these facts it is clear that the voters who read these pamphlets understood that the proposed law would limit the rate of interest to be charged by personal property brokers.

"Our conclusion is that the Usury Law has repealed *pro tanto* the act regulating personal property brokers, and such brokers may not charge or receive interest at a rate exceeding twelve per cent per annum."

Further discussion might be indulged as this cause has been presented most earnestly by lengthy and able briefs, supplemented by briefs of *amici curiae*, but the effort seems unnecessary further than to say that we have been mindful of the asserted economic value that might accrue through an exception to the Usury Law allowing a greater rate of interest than one per cent per month on loans of $300 or less and that such a change would probably be just both to the lender and to the borrower. Nor are we unmindful of the fact that a statute substantially similar to the act of 1931 here under review is successfully operating in each of some twenty-five or more states of the Union, due largely to the philanthropic efforts of the Russell Sage Foundation of New York. ▪▪ The answer is that the Usury Law is adamant and has the force of a constitutional provision. It cannot be amended except by re-applying to the people of the state for their consent.

If the Usury Law displaces sections 2 and 3 of the Act of 1909 it follows that sections 2 and 3 of the Act of 1931, here under review, must fall, being likewise and for the

same reasons in plain conflict with the Usury Law itself. Further comment might be made to the effect that in order to uphold said sections of the act of 1931, it would be necessary to hold that the entire subject of charges and regulations of personal property brokers of all classes was intentionally omitted from the operation of the Usury Law. But the act of 1931 only proposes to affect one group of this class of lenders. What, then, we may ask, becomes of the remainder of the group? Under petitioner's contention pawnbrokers (Pen. Code., secs. 338–340) are likewise unaffected by the Usury Law. We would then have one class and part of another without the Usury Law and part of one class only under it. Many other impossible difficulties might arise were exceptions to the Usury Law created.

Whether or not there is any substance left in sections 4, 5 and 6 of the Act of 1909, as amended in 1911 and 1913, is not a question directly here involved.

We may add that we were to some extent impressed for a time with the contention that the three and one-half per cent per month rate could be subdivided into an interest rate of one per cent per month and a service and expense charge of not to exceed two and one-half per cent per month. And we have been pointed to the case of *Koen* v. *State,* 162 Tenn. 573 [39 S. W. (2d) 283], where a statute was held valid which read as follows (Code of Tennessee, 1932, Williams Shannon Harsh, p. 1512, sec. 6733) : "Every person, licensed hereunder, may lend any sum of money not exceeding in amount the sum of three hundred dollars, and may contract for, charge and receive thereon interest not to exceed six per cent per annum; provided, however, that the licensee may charge and receive for investigating the moral and financial standing of the applicant, investigating the security, titles, etc., and for other expenses and losses of every nature whatsoever, and for closing the loan, a fee not above three per cent per month of the principal sum lent over the term of the loan, both interest and fee to be computed on the unpaid balance of the principal due at the end of each month over the life of the loan." This statute was upheld because the lender could charge the actual service and expense outlay, but could not in any event exceed the three per cent per month. In this behalf the court said :

"Nor does the act violate article XI, section 7, of the Con-

stitution, requiring the legislature to fix an equal and uniform rate of interest. It fixes the uniform rate at 6 per cent per annum, and limits the maximum service fees that the lender may impose for investigating the moral and financial standing of the applicant and the nature and value of the assurance for repayment of the loan and other necessary expenses and losses for closing the loan to a maximum charge of 3 per cent per month. By thus prescribing the maximum expense fee, the legislature did not intend to fix it as a definite charge in addition to the interest. . . . The legislature could not authorize the lender to arbitrarily fix a monthly expense fee of 3 per cent in addition to the annual interest on loans and did not intend to do so. As stated, the object was to fix a maximum service charge beyond which the lender could not go without making a conclusive case against him resulting in the forfeiture to the borrower of the entire loan, together with the charges thereon. It left the loan company and the borrower free to agree upon a reasonable service charge which in no event could exceed the maximum of 3 per cent per month.''

We are unable to construe sections 2 and 3 of the act before us as having the same meaning as the above-quoted Tennessee statute. These sections fix an arbitrary amount that may be charged regardless of the actual value of the service or expense and regardless of the fact that there may be no service or expense.

We are not intending to hold that the Usury Law prevents a classification, as made by the act, of brokers according to the amount involved and the nature of the security taken. We recognize that similar segregation has been held valid in several other states of the Union. Nor are we intending to hold that a statute which allows the legal rate fixed by the Usury Law and yet limits the service or expense charges to the actual outlay, and not to exceed a definite limit, would be in conflict with other provisions of the Usury Act. The Usury Law does not purport to fix or limit the legitimate expense or service charge that may properly be borne by the borrower. (*Wallace* v. *Zinman,* 200 Cal. 585, 589 [62 A. L. R. 1341, 254 Pac. 946]; *Haines* v. *Commercial Mortgage Co.,* 200 Cal. 609, 616 [53 A. L. R. 725, 254 Pac. 956, 255 Pac. 805].)

Notwithstanding the above holding, as under authority of the case of *In re Halck, ante,* p. 500 [11 Pac. (2d) 389], this day decided, the license provisions contained in the said act have been sustained, no sufficient ground exists for respondent's refusal to issue a license to petitioner.

Let the writ issue as prayed.

Shenk, J., Seawell, J., Curtis, J., Tyler, J., *pro tem.,* and Waste, C. J., concurred.